**11**

KEITH C. OWENS (SBN 184841)
kowens@foxrothschild.com
NICHOLAS A. KOFFROTH (SBN 287854)
nkoffroth@foxrothschild.com
**FOX ROTHSCHILD LLP**
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9829

*Proposed Counsel to Oroville Hospital, et al., the Debtors and Debtors-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| In re: | Lead Case No. 25-26876 |
| OROVILLE HOSPITAL, *et al.*,[1] | Jointly Administered With: Case No. 25-26877 |
| Debtors and Debtors in Possession. | **DCN KCO-7** |
| | Chapter 11 |
| ☒ Affects All Debtors | Hon. Christopher D. Jamie |
| ☐ Affects Oroville Hospital<br>☐ Affects OroHealth Corporation: A Nonprofit Healthcare System | **Hearing Information**<br>Hearing Date: December 11, 2025<br>Hearing Time: 11:00 a.m.<br>Location: Courtroom 32<br>501 I Street, Sixth Floor<br>Sacramento, California 95814<br>*or*<br>by Zoom Webinar |
| Debtors and Debtors in Possession. | |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF
INTERIM AND FINAL ORDERS: (I) AUTHORIZING THE DEBTORS
TO HONOR PREPETITION OBLIGATIONS TO PHYSICIANS AS
CRITICAL VENDORS; AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Oroville Hospital (4554) and OroHealth Corporation: A Nonprofit Healthcare System (4776). The mailing address for the Debtors is 2767 Olive Highway, Oroville, California, 95966.

Oroville Hospital, a California nonprofit public benefit corporation ("Oroville Hospital"), and OroHealth Corporation: A Nonprofit Healthcare System ("OroHealth" and, together with Oroville Hospital, the "Debtors"), the debtors and debtors in possession in the above-captioned cases (the "Chapter 11 Cases") filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),[2] hereby submit this motion (the "Motion") for entry of orders, substantially in the form attached to the Exhibit List as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final Order" respectively) filed concurrently herewith, pursuant to §§ 105(a), 107(b), 363, 1107(a), and 1108 of the Bankruptcy Code, Rules 6003, 6004, 9018, and 9037 of the Federal Rules of Bankruptcy Procedure (the, "Bankruptcy Rules"), and Rules 9018-1 and 9037-1 of the Local Rules of Practice (the "LBR"): (i) authorizing the Debtors to honor prepetition obligations to its Physicians as Critical Vendors (defined below); and (ii) granting related relief. In addition, the Debtor requests that the Court schedule a final hearing within twenty-one (21) days of the commencement of this chapter 11 case to consider approval of this motion on a final basis. In support of this Motion, the Debtors refer to the *Declaration of Robert J. Wentz in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") and the *Declaration of Robert J. Wentz in Support of Debtors' Emergency Motion for Entry of Interim and Final Orders: (i) Authorizing the Debtors to Honor Prepetition Obligations to its Physician as Critical Vendors; and (ii) Granting Related Relief* (the "Wentz Declaration"), the *Memorandum of Points and Authorities* in support of the Motion (the "Memorandum"), and the Exhibits in support of this Motion (the "Exhibit List"), filed contemporaneously herewith, and such other evidence and testimony as may be presented at the hearing on the Motion (the "Hearing").

## I.

## JURISDICTION AND VENUE

The United States Bankruptcy Court for the Eastern District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and General Orders 182 and 223

---

[2] Unless otherwise indicated herein, all references to "§" or "Section" refer to a Section of the Bankruptcy Code.

-2-

of the United States District Court for the Eastern District of California. The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The bases for the relief requested herein are §§ 105(a), 107(b), 363, 1107(a), and 1108, Bankruptcy Rules 6003, 6004, 9018, and 9037, and Rules 9018-1 and 9037-1 of the Local Rules of Practice.

## II.

## FACTUAL BACKGROUND

**A.    General Background**

On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which initiated the Chapter 11 Cases. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no committees have been appointed or designated.

OroHealth, Oroville Hospital, and their affiliated nondebtor entities operate as a California nonprofit health care system in and around Butte County, California, with approximately 133 general acute care beds (including 10 intensive care and 10 perinatal beds), an active emergency room, 14 "flex" beds separately authorized by the California Department of Public Health on an annual basis, and 126 skilled nursing facility beds. The Debtors also provide 33 specialty services at their 31 clinics (including 10 rural health clinics) in Oroville, Yuba City, and Chico, and provide laboratory services through Valley Clinical Laboratory with 23 outpatient laboratory draw stations in Oroville, Yuba City, Chico, Grass Valley, Orland, and Redding. In its fiscal year ended 2024, the Debtors recorded 98,018 patient days (adjusted to account for outpatient visits), 26,416 emergency room visits, 2.2 million lab tests, 361,558 clinic visits, and 384 births at their facilities. Each of the Debtors are exempt

from federal income taxation as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986. A more detailed description of the Debtors, including their current and historical business operations and the events precipitating the Chapter 11 Cases, are set forth in the First Day Declaration.

**B.       The Physicians are Independent Contractors**

The Debtors are served by approximately 150 physicians, surgeons, and physician medical directors (the "<u>Physicians</u>"). Due to California's ban on the Corporate Practice of Medicine, the Physicians are all independent contractors or employees of physician groups that contract with the Debtors. The Physicians provide a broad range of life-saving medical care and treatment for patients of the Hospital. Additionally, because the Hospital provides the only emergency services[3] in Oroville and the surrounding area, the Hospital and its Physician caregivers impact a large geographic area. The Physicians are also the primary driver of the Hospital's revenue. Fees generated by the Physicians and the services they provide are the primary source of revenue for the Hospital. As such, from both a patient care and a revenue perspective, the Physicians truly are the Hospital's lifeblood.

The Debtors have entered into agreements with the Physicians for a broad range of specialties. As of the Petition Date, the Debtors owe the Physicians approximately $8.4 million in prepetition normal course compensation for the month of November 2025 and the first eight days of December (the "<u>Physician Claims</u>").

**C.       The Physicians are Critical Vendors**

The Debtors, in consultation with their advisors, have determined that the Physicians are critical because: **(a)** they are essential to (i) patient care, (ii) maintaining the Debtors' business in full compliance with California's requirements for operating general acute care hospitals, and (iii) continuing to provide needed patient care and services postpetition; **(b)** they are not easily replaced, and any such effort would be time consuming and prohibitively expensive; **(c)** they may decide to seek alternative employment if not paid in full for prepetition services; and **(d)** the Debtors will suffer

---

[3] The nearest 24-hour full-service emergency room to Oroville Hospital is a 35-to-45-minute drive away.

immediate and irreparable harm if the Physicians are not specially incentivized to continue providing essential services.

immediate and irreparable harm if the Physicians are not specially incentivized to continue providing essential services.

### 1. The Physicians are Essential to Patient Care and Maintenance of the Debtors' Business During the Pendency of the Chapter 11 Cases.

The Debtors and the communities they serve are in an extremely vulnerable position. Maintaining its obligations to the Oroville community and staying in compliance with extensive state and federal regulations and requirements necessitates the Physician's continued services. Any disruption in Physician staffing may jeopardize the Hospital's ability to provide life-saving care and compromise the Debtors' ability to maintain their high standards of patient care and safety. This would irreparably harm the Debtors, and by extension, the Debtors' patients and the communities in which the Debtors serve. Moreover, as the operator of a hospital licensed under California law and certified to participate in the Medicare and Medi-Cal programs, local, state, and federal laws and regulations place certain compliance requirements on the Debtors. These regulations and requirements can only be fulfilled through continued services of the Physicians. Thus, in order to ensure the timely and proper care of the Debtors' patients and maintain ongoing business operations, it is imperative the Debtors are able to rely on the services of their Physicians, which are critical to patient care and the Debtors' uninterrupted business operations during the pendency of the Bankruptcy Cases, which will preserve the value of the Debtors' businesses and assets for the benefit of all stakeholders while serving the communities in which the Debtors operate.

### 2. The Physicians are not Easily Replaced, and Recruiting new Physicians Would be Time Consuming and Prohibitively Expensive.

Oroville Hospital's primary and secondary service areas have been designated by the State of California as "Health Professional Shortage Areas," and the California Department of Healthcare Access and Information ("HCAI") has identified Butte County as having a low physician supply.[4] It is harder for rural hospitals to recruit physicians, takes longer relative to more urban settings, and is

---

[4] *See* Cal. Dept. of Healthcare Access & Info., *Physician Supply & Preventable Hospitalizations by County* (2023), https://hcai.ca.gov/visualizations/physician-supply-and-preventable-hospitalizations-by-county/ (last visited Nov. 20, 2025).

often more expensive. As such, if even a small number of Physicians were to leave the Hospital to pursue other opportunities, the time and expense associated with recruiting would place a significant burden on the Debtors' estates. This would lead to a decline in revenue and the availability of medical services at the Hospital, potentially leaving gaps in care that would have a negative impact on the communities served by the Hospital.

### 3. The Physicians may decide to seek alternative employment if not compensated for unpaid prepetition services.

The job market for physicians is highly competitive, and opportunities for physicians are plentiful. Accordingly, without the ability to pay the Physicians for prepetition services, the Debtors strongly believe that this demoralizing disruption in compensation may cause many to pursue alternative opportunities. This would have a devastating impact on the communities served by the Hospital and result in irreparable harm to the Debtors postpetition operation, the smooth transition into chapter 11, and the preservation and maximization of value for the benefit of the Debtors' creditors. Further, the Physicians are "clinically dependent" in that they rely on each other to provide services to their patients. The Physicians also provide mandated supervision for mid-level caregivers including physician assistants and nurse practitioners. Accordingly, the departure of one physician can have ripple effects beyond his or her individual practices, and that ripple could turn into a wave if multiple physicians were to leave the Hospital.

### 4. The Debtors will suffer immediate and irreparable harm if the Physicians are not specially incentivized to continue providing essential services.

For all the reasons stated above, the risk of an exodus of Physicians following the Petition Date would result in immediate and irreparable harm to the Debtors' ability to: (1) provide critical medical care to the communities in which they serve; (2) generate revenue to fund operations and the costs of administration; and (3) conduct a successful sale through these bankruptcy proceedings to maximize the value of the Debtors' businesses and assets for the benefit of all stakeholders. Simply put, the prospect of losing physicians could put the Debtors' sale or restructuring efforts at risk, which would have a detrimental impact on the Debtors' ability to operate and to continue to service their patients, the Debtors' efforts to maximize value for all stakeholders.

## III.

## **RELIEF REQUESTED**

By this Motion, the Debtors seek authority to pay, in their discretion, all or part of the Physician Claims, subject to certain conditions and procedures described below, up to $8.4 million (the "Critical Vendor Cap"), with (i) an interim amount of up to $6.75 million as needed to avoid immediate and irreparable harm; and (ii) an additional amount of $1.65 million on a final basis.

Debtors propose to make full or partial payment to the Physicians pursuant to this Motion in the exercise of their business judgment, only to the extent deemed necessary, to ensure that the Debtors can continue to operate without an unacceptable risk of disruption and to avoid the severe negative consequences Debtors may suffer on account of unpaid Physicians.

The payment of any Physician Claim will be conditioned on an express agreement (the "Critical Vendor Agreement") in form and substance substantially similar to the form Critical Vendor Agreement attached as **Exhibit C** to the List of Exhibits filed concurrently herewith between the Physician and the Debtors which will include, without limitation, the following information and terms:

- o The amount of the Physician's estimated prepetition claim, accounting for any setoffs, other credits, or discounts thereto, which would be mutually determined in good faith by the Physician and Debtors (but such amount would be used only for the purposes of determining the Physician Claim under the Critical Vendor Order and would not be deemed a claim allowed by the Court for any other purpose in the Bankruptcy Cases, and the rights of all interested persons to object to such claims would be fully preserved until further order of the Court);

- o The Physician's agreement to continue providing services consistent with and as required under their current agreement with the Debtors;

- o The Physician's acknowledgement that they have reviewed the terms and provisions of the Critical Vendor Order, and consents to be bound thereby;

- o If a Physician fails to comply with the applicable Critical Vendor Agreement, including, but not limited to, a failure to continue providing services consistent with their current agreement with the Debtors for a period of not less than one hundred twenty (120) days following execution of the Critical Vendor Agreement: (a) any payment made to that Physician may be deemed to be an improper postpetition transfer on account of a prepetition claim, and therefore, immediately recoverable by the Debtors in cash upon written request pursuant to § 549; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had

not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

The Debtors submit that the relief requested herein is essential, appropriate and in the best interests of the Debtors, their creditors, and all parties in interest.

## IV.

## LEGAL BASES FOR RELIEF REQUESTED

### A. The Court Should Authorize the Payment of the Physicians as Critical Vendors Pursuant to 11 U.S.C. §§ 363(b) and 105(a).

The Court has authority under §§ 363(b) and 105(a) to authorize a debtor to pay prepetition claims to critical vendors. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate…" 11 U.S.C. § 363(b)(1). Section 363(c)(1) allows the Debtors to use property of the estate in the ordinary course of business without court approval. Further, bankruptcy courts require only that the debtor "show that a sound business purpose" justifies the proposed use of property under § 363(b)(1). *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)). Courts recognize that a debtor in possession has a fiduciary duty to, among other things, protect and preserve the bankruptcy estate. *See In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

Section 105(a) provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. Pursuant to § 105(a), courts have invoked the *"necessity of payment" doctrine* to authorize the immediate payment of certain pre-petition obligations to unsecured creditors before plan confirmation when such payment is essential to the continued operation of the debtor in a chapter 11 reorganization and preservation of the debtor's estate. *See, e.g.*, *In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to

-8-

debtor's continued operation); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims"). Bankruptcy courts in the Ninth Circuit have approved payment of pre-petition claims for critical vendors pursuant to section 105(a). *See, e.g., In re Verity Health System of California, Inc.*, No. 2:18-bk-20151-ER (Bankr. C.D. Cal. Sept. 7, 2018) [Docket No. 134].

**B.    Payment of the Physicians as Critical Vendors is in Furtherance of the Debtors' Fiduciary Duties Under 11 U.S.C. §§ 1107(a) and 1108.**

Further, the Debtors, operating their business as debtors in possession under §§ 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *CoServ*, 273 B.R. at 497. Implicit in the duties of chapter 11 debtors in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.* Courts have noted that there are instances in which debtors in possession can fulfill their fiduciary duties "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," and also when the payment was to "sole suppliers of a given product." *Id.* at 498.

Finally, paying certain prepetition Physician Claims is appropriate here because it is consistent with the "two recognized policies" of chapter 11—preserving the going concern value for the Debtor's business and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship,* 526 U.S. 434, 453 (1999).

Additional points and authorities in support of the relief requested are included it the Memorandum filed contemporaneously herewith.

## V.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Interim Order as follows:

1. Authorizing, but not directed, the Debtors, in the reasonable exercise of their business judgment, to honor, pay, or otherwise satisfy, on a case-by-case basis, all or part of the prepetition Physician Claims in an amount not to exceed $6.75 million pending entry of the Final Order.

2. Authorizing, but not direct, the Debtors to condition payment of the Physician Claims upon the terms of the Critical Vendor Agreement, and if such Physician fails to comply with said Critical Vendor Agreement: (a) any payment on account of a prepetition Physician Claim received by such party shall be deemed, in the Debtors' discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such Physician will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

3. Authorizing, but not directing, the banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

4. Authorizing, but not directing, the Debtors to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

5. Scheduling a final hearing on the Motion, and entering the Final Order substantially in the form attached as **Exhibit B** to the Exhibit List, filed contemporaneously herewith; and

6. For such other and further relief as the Court deems just and proper.

Dated: December 8, 2025

**FOX ROTHSCHILD LLP**

*/s/ Keith C. Owens*
Keith C. Owens
Nicholas A. Koffroth

*Proposed Counsel to Oroville Hospital, et al., the Debtors and Debtors-in-Possession*