7

KEITH C. OWENS (SBN 184841)
kowens@foxrothschild.com
NICHOLAS A. KOFFROTH (SBN 287854)
nkoffroth@foxrothschild.com
**FOX ROTHSCHILD LLP**
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:    (310) 598-4150
Facsimile:    (310) 556-9829

*Proposed Counsel to Oroville Hospital, et al.,
the Debtors and Debtors-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| In re: | Lead Case No. 25-26876-C-11 |
| OROVILLE HOSPITAL, *et al.*,[1] | Jointly Administered With: Case No. 25-26877 |
| Debtors and Debtors in Possession. | **DCN KCO-7** |
| | Chapter 11 |
| ☒ Affects All Debtors | Hon. Christopher D. Jamie |
| ☐ Affects Oroville Hospital<br>☐ Affects Orohealth Corporation: A Nonprofit Healthcare System | **Hearing Information**<br>Hearing Date: December 11, 2025<br>Hearing Time: 11:00 a.m.<br>Location:    Courtroom 32<br>           501 I Street<br>           Sacramento, California 95814<br>           *or*<br>           by Zoom Webinar |
| Debtors and Debtors in Possession. | |

**DECLARATION OF ROBERT J. WENTZ
IN SUPPORT OF DEBTORS' EMERGENCY MOTION FOR ENTRY OF
INTERIM AND FINAL ORDERS: (I) AUTHORIZING THE DEBTORS
TO HONOR PREPETITION OBLIGATIONS TO PHYSICIANS AS
CRITICAL VENDORS; AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Oroville Hospital (4554) and OroHealth Corporation: A Nonprofit Healthcare System (4776). The mailing address for the Debtors is 2767 Olive Highway, Oroville, California, 95966.

I, Robert J. Wentz, hereby state and declare as follows:

1. I am the President and Chief Executive Officer of Oroville Hospital ("Oroville Hospital" or "Hospital"). I am also the Chief Executive Officer of Oroville Hospital's parent corporation, Orohealth Corporation: A Nonprofit Healthcare System ("OroHealth" and, together with Oroville Hospital, the "Debtors"). I make this declaration in support of the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Honor Prepetition Obligations to Physicians as Critical Vendors* (the "Motion") filed concurrently herewith and for all other purposes authorized by law.[2]

2. Except as otherwise indicated, all facts in this declaration are based upon my personal knowledge, my discussions with the Debtors' management team and advisors, including FTI Consulting, Inc. ("FTI") as their financial advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge. The documents referenced herein, or otherwise relied upon for purposes of this Declaration, are business records of the Debtors, prepared and kept in the ordinary course of the regularly conducted business activities of the Debtors and used by me for those purposes. I am over the age of eighteen and authorized to submit this declaration on behalf of the Debtors. If called upon as a witness, I could and would testify competently to the facts set forth in this Declaration.

3. OroHealth, Oroville Hospital, and their affiliated nondebtor entities operate as a California nonprofit health care system in and around Butte County, California, with approximately 133 general acute care beds (including 10 intensive care and 10 perinatal beds), an active emergency room, 14 "flex" beds separately authorized by the California Department of Public Health on an annual basis, and 126 skilled nursing facility beds. The Debtors also provide 33 specialty services at their 31 clinics (including 10 rural health clinics) in Oroville, Yuba City, and Chico, and provide laboratory services through Valley Clinical Laboratory with 23 outpatient laboratory draw stations in

---

[2] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Memorandum of Points and Authorities filed concurrently herewith.

Oroville, Yuba City, Chico, Grass Valley, Orland, and Redding. In its fiscal year ended 2024, the Debtors recorded 98,018 patient days (adjusted to account for outpatient visits), 26,416 emergency room visits, 2.2 million lab tests, 361,558 clinic visits, and 384 births at their facilities. Each of the Debtors are exempt from federal income taxation as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986. A more detailed description of the Debtors, including their current and historical business operations and the events precipitating these bankruptcy cases (the "Chapter 11 Cases"), will be set forth in the *Declaration of Robert J. Wentz in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") to be filed subsequent to this Declaration.

4.  On December 8, 2025 (the "Petition Date"), the Debtors initiated these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[3] As of the date of this Declaration, the Debtors are operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no committees have been appointed or designated.

5.  The Debtors are served by approximately 150 physicians, surgeons, and physician medical directors (the "Physicians"). Due to California's ban on the Corporate Practice of Medicine, the Physicians are all independent contractors or employees of physician groups that contract with the Debtors. The Physicians provide a broad range of life-saving medical care and treatment for patients of the Hospital, including, but not limited to: (a) care for critically ill patients suffering from illnesses including acute heart disease, stroke, traumatic injuries, and other life-threatening disorders; (b) pediatric care essential for a child's physical and mental well-being; and (3) radiation therapy for cancer patients. Additionally, because the Hospital provides the only emergency services[4] in Oroville and the surrounding area, the Hospital and its Physician caregivers impact a large geographic area. The Physicians are also the primary driver of the Hospital's revenue. Fees generated by the Physicians

---

[3] Unless otherwise indicated herein, all references to "§" and "Section" refer to a Section of the Bankruptcy Code.

[4] The nearest 24-hour full-service emergency room to Oroville Hospital is a 35-to-45-minute drive away.

and the services they provide are the primary source of revenue for the Hospital. As such, from both a patient care **and** a revenue perspective, the Physicians truly are the Hospital's **lifeblood**.

6. The Debtors have entered into agreements with the Physicians for a broad range of specialties as further detailed in the table below. As of the Petition Date, the Debtors owe the Physicians approximately **$8.4 million** in prepetition normal course compensation for the month of November 2025 and the first eight days of December.

| | | |
|---|---|---|
| 1. Aesthetic Medicine | 18. Endocrinology | 35. Podiatry |
| 2. Allergy and Immunology | 19. Endoscopy | 36. Primary Care |
| 3. Ambulatory Care | 20. Gastroenterology | 37. Psychiatry |
| 4. Anesthesia Services | 21. Hospitalist Services | 38. Pulmonary |
| 5. Anticoagulation Services | 22. Intensive Care Unit | 39. Pulmonary Functioning |
| 6. Bariatric Surgery | 23. Laboratory Services | 40. Radiology |
| 7. Breast Cancer Services | 24. Nephrology | 41. Respiratory Care |
| 8. Cardiac Catheterization | 25. Neurodiagnostics | 42. Robotic Surgery |
| 9. Cardiology | 26. Neurology | 43. Sleep Disorder Testing |
| 10. Cardiovascular Testing | 27. Nutrition Therapy | 44. Stroke Program |
| 11. Childbirth Services | 28. Obstetrics / Gynecology | 45. Surgical Services |
| 12. Chiropractic Services | 29. Ophthalmology | 46. Telemedicine |
| 13. Colorectal Surgery | 30. Orthopedic Surgery | 47. Urology |
| 14. Dermatology | 31. Pain Management | 48. Valley Medical Imaging |
| 15. Dentistry | 32. Palliative Care Program | 49. Vascular Surgery |
| 16. Ear, Nose and Throat | 33. Pediatric Services | 50. Women's Imaging |
| 17. Emergency Care | 34. Pharmacy | |

7. The Debtors, in consultation with their advisors, have determined that the Physicians are critical because: **(a)** they are essential to (i) patient care, (ii) maintaining the Debtors' business in full compliance with California's requirements for operating general acute care hospitals, and (iii) continuing to provide needed patient care and services post-petition; **(b)** they are not easily replaced, and any such effort would be time consuming and prohibitively expensive; **(c)** they may be decide to seek alternative employment if not paid in full for prepetition services; and **(d)** the Debtors will suffer immediate and irreparable harm if the Physicians are not specially incentivized to continue providing essential services.

8. The Debtors and the communities they serve are in an extremely vulnerable position. Maintaining its obligations to the Oroville community and staying in compliance with extensive state and federal regulations and requirements necessitates the Physician's continued services. Any disruption in Physician staffing may jeopardize the Hospital's ability to provide life-saving care and

compromise the Debtors' ability to maintain their high standards of patient care and safety. This would irreparably harm the Debtors, and by extension, the Debtors' patients and the communities in which the Debtors serve. Any disruption in Physician staffing could also have a negative impact on maintaining the going-concern value of the Debtors' business and assets and threaten the sale process contemplated by the Debtors. Thus, in order to ensure the timely and proper care of the Debtors' patients and maintain ongoing business operations, it is imperative the Debtors are able to rely on the services of their Physicians, which are critical to patient care and the Debtors' uninterrupted business operations during the pendency of the Bankruptcy Cases, which will preserve the value of the Debtors' businesses and assets for the benefit of all stakeholders while serving the communities in which the Debtors operate.

9. Moreover, as the operator of a hospital licensed under California law and certified to participate in the Medicare and Medi-Cal programs, local, state, and federal laws and regulations place certain compliance requirements on the Debtors. The Debtors must comply with all hospital licensing and certification requirements under California law. Including the California Health and Safety Code (Cal. Health & Safety Code §§ 1250 *et seq.*) and Title 22 of the California Code of Regulations (22 Cal. Code Regs. §§ 70001 *et seq.*; 22 Cal. Code Regs. § 51207). As a certified Medicare and Medi-Cal reimbursement programs participant, the Debtors must remain compliant with certain requirements and conditions to participation set forth in Title 42 of the U.S. Code of Federal Regulations. 42 C.F.R. §§ 482 *et seq.* The Debtors must also monitor and comply with all other licensing and operational requirements applicable to the Hospital's programs and service lines, including those applicable to hospital pharmacies and laboratories. *See, e.g.,* Cal. Bus. & Prof. Code §§ 1200 *et seq.*; Cal. Bus. & Prof. Code §§ 4000 *et seq.*; *see also* Cal. Health & Safety Code §§ 11000 *et seq.* (establishing compliance requirements for distribution of controlled substances under the California Controlled Substances Act). These regulations and requirements can only be fulfilled through continued services of the Physicians.

10. Oroville Hospital's primary and secondary service areas have been designated by the State of California as "Health Professional Shortage Areas," and the California Department of Healthcare Access and Information ("HCAI") has identified Butte County as having a low physician

supply.[5] This shortage of physicians reflects a national shortage of doctors in rural communities, and the unique challenges rural hospitals face when trying to recruit new doctors. Limited local training opportunities, geographic isolation from larger medical communities, and limited employment opportunities for spouses are common recruiting hurdles, and Oroville Hospital has had to combat these, and other challenges, when recruiting physicians. These factors not only make it harder for the Hospital to recruit physicians, but it also extends the time it takes to recruit physicians to fill open positions as well as the attendant cost. It can take from several months to more than a year to recruit a new physician for certain specialties, and there are significant costs associated with recruiting. For example, professional recruiters typically charge a fee based on the specific physician's annual salary. That fee can be as high as thirty percent (30%) and equate to many thousands of dollars. Additional recruiting costs include signing bonuses, reimbursement for moving expenses, recruitment loans, and loan forgiveness in certain situations..

11. As such, if even a small number of Physicians were to leave the Hospital to pursue other opportunities, the time and expense associated with recruiting would place a significant burden on the Debtors' estates. This would lead to a decline in revenue and the availability of medical services at the Hospital, potentially leaving gaps in care that would have a negative impact on the communities served by the Hospital. While some positions could potentially be filled by locum tenens physicians, this temporary fix is on average fifty percent (50%) more expensive than physicians employed through the Hospital's standard practices, and they are less common for certain specialties such as obstetrics/gynecology, which plays a critical role in community health and wellbeing.

12. Due to the national shortage of physicians, including both primary care and specialist physicians, the job market is highly competitive, and opportunities for physicians are plentiful. Accordingly, without the ability to pay the Physicians for prepetition services, the Debtors strongly believe that the demoralizing disruption in compensation will cause many to pursue alternative opportunities. Between thirty (30%) to forty (40%) percent of the Physicians live outside of Oroville,

---

[5] *See* Cal. Dept. of Healthcare Access & Info., *Physician Supply & Preventable Hospitalizations by County* (2023), https://hcai.ca.gov/visualizations/physician-supply-and-preventable-hospitalizations-by-county/ (last visited Nov. 20, 2025).

largely in the communities Sacramento, Roseville, Rockland, and Lincoln. As such, it would be easier for these Physicians to seek alternative opportunities in their hometown communities. As previously noted, this would have a devastating impact on the communities served by the Hospital and result in irreparable harm to the Debtors postpetition operation, the smooth transition into chapter 11, and the preservation and maximization of value for the benefit of the Debtors' creditors.

13.　Further, the Physicians are "clinically dependent" in that they rely on each other to provide services to their patients. For example, a surgeon cannot perform an operation without an anesthesiologist, and a surgeon typically relies on a pathologist to direct and inform the surgical procedure. Similarly, an interventional radiologist requires the services of a vascular surgeon, and an oncologist relies on a radiologist to guide cancer therapies. The Physicians also provide mandated supervision for mid-level caregivers including physician assistants and nurse practitioners. The departure of a supervising physician would mean that a reporting physician assistant or nurse practitioner, many of whom provide frontline primary care, could no longer provide healthcare services unless reassigned to a new supervising physician. Accordingly, the departure of one physician can have ripple effects beyond their own individual practice, and that ripple can turn into a wave if multiple physicians were to leave the Hospital.

14.　For all the reasons stated above, the risk of an exodus of Physicians following the Petition Date would result in immediate and irreparable harm to the Debtors' ability to: (1) provide critical medical care to its community; (2) fund the Chapter 11 Cases; and (3) conduct a successful sale through this Bankruptcy proceeding to maximize the value of the Debtors' businesses and assets for the benefit of all stakeholders. Simply put, it could doom the Chapter 11 Cases from the beginning.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated this 8th day of December, 2025, in Butte County, California.

_____
Robert J. Wentz