Filed 12/10/25     Case 25-26876     Doc 73

PETER C. ANDERSON
UNITED STATES TRUSTEE
EDMUND GEE, SBN 178627
ASSISTANT UNITED STATES TRUSTEE
JASON BLUMBERG, SBN 330150
TRIAL ATTORNEY
**UNITED STATES DEPARTMENT OF JUSTICE**
OFFICE OF THE UNITED STATES TRUSTEE
501 "I" Street, Suite 7-500
Sacramento, CA 95814
Telephone: (916) 930-2100
Email: jason.blumberg@usdoj.gov

Attorneys for Peter C. Anderson
United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | Lead Case No. 25-26876 |
| OROVILLE HOSPITAL, *et al.*, | Jointly Administered With: Case No. 25-26877 |
| Debtors and Debtors in Possession.[1] | DCN NAK-7 |
| ☒ Affects All Debtors | Chapter 11 |
| ☐ Affects Oroville Hospital | Hon. Christopher D. Jaime |
| ☐ Affects OroHealth Corporation: A Nonprofit Healthcare System | Hearing Date: December 11, 2025<br>Hearing Time: 11:00 a.m.<br>Location: Courtroom 32<br>         501 I Street<br>         Sacramento, California 95814<br>         or *by Zoom Webinar* |
| Debtors and Debtors in Possession. | |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS'**
**MOTION FOR DIP FINANCING AND USE OF CASH CAOLLATERAL**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Oroville Hospital (4554) and Orohealth Corporation: A Nonprofit Healthcare System (4776). The mailing address for the Debtors is 2767 Olive Highway, Oroville, California, 95966.

1

Peter C. Anderson, the United States Trustee for Region 17 (the "UST"), by and through his undersigned counsel, hereby files this preliminary objection to the *Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (ECF No. 58) (the "Motion"). In support of his Objection, the UST respectfully represents as follows:

## I.   INTRODUCTION

1. As a threshold matter, consideration of the Motion should be deferred until the Debtors file the form of Interim Order[2] and the DIP Credit Agreement. See Fed. R. Bankr. P. 4001(c)(1)(A).

2. If the Court is inclined to consider the Motion on December 11, 2025, the UST opposes the Motion, unless the DIP Facility is modified to address the concerns set forth in Paragraph 26 of this Objection.

## II.   FACTUAL BACKGROUND

**A.    General Case Background**

3. On December 8, 2025 (the "Petition Date"), the Debtors commenced voluntary cases under Chapter 11 of the United States Bankruptcy Code. See ECF No. 1. The Debtors are currently debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4. On the Petition Date, the Court entered an Order directing the joint administration of these cases for procedural purposes only. See ECF No. 15.

5. The Debtors have not yet filed the required Schedules and Statements, including Schedule A/B, Schedule D, Schedule E/F, and the Statement of Financial Affairs. See ECF No. 3. The Debtors have requested that their deadline to file these documents be extended to January 22, 2026. See ECF No. 65.

6. According to the Petition filed in Case No. 25-26876, the estimated amount of Debtor Orohealth Hospital's assets is between $500,000,001 and $1 billion, and the estimated amount of its liabilities is between $100,000,001 and $500 million. See ECF No. 1.

7. According to the Petition filed in Case No. 25-26877, the estimated amount of Debtor Orohealth Corporation's assets is between $10,000,001 and $50 million, and the estimated amount of its liabilities is between $1,000,001 and $10 million. See ECF No. 1 in Case No. Case No. 25-26877.

8. The UST is soliciting creditors to form an official committee of unsecured creditors.

9. The initial debtor interview and the meeting of creditors under 11 U.S.C. § 341 will be held on January 14, 2026, and January 20, 2026, respectively.

10. According to the first day declaration of Robert J. Wentz (ECF No. 20) (the "First Day Declaration"), the Debtors and their affiliates operate "as a California nonprofit health care system in and around Butte County, California, with approximately 133 general acute care beds …. an active emergency room … and 126 skilled nursing facility beds. The Debtors also provide 33 specialty services at their 31 clinics …." See First Day Declaration, at ¶ 8.

11. The Debtors "intend to pursue a sale process in these Chapter 11 Cases." <u>See</u> First Day Declaration, at ¶ 59.

**B.    <u>The Motion</u>**

12. As set forth in the Motion, Rosemawr Management, LLC (the "<u>DIP Lender</u>") has agreed to lend the Debtors $38 million. Of this amount, $16 million would be available on an interim basis. The maturity date is, generally, the earlier of (i) December 31, 2026, (ii) the sale of substantially all the Debtors' assets, or (iii) acceleration of the DIP Facility upon an Event of Default. <u>See</u> Motion, at pp. 2, 5 of 16.

13. Under the proposed DIP Facility, the non-default interest rate ranges from 11% to 12% per annum. The default interest rate ranges from 13% to 14% per annum. <u>See</u> Motion, at pp. 4-5 of 16.

14. Upon interim approval of the DIP Facility, the DIP Lender would be entitled to loan fees totaling $1,140,000.00, with $760,00 payable on entry of the Interim Order and $380,000 payable on the Maturity Date. <u>See</u> Motion, at p. 5 of 16.

15. The DIP Lender's collateral package would include liens on all the Debtors' assets. The DIP Liens would "prime" the existing liens of the Bondholders, who would receive as adequate protection junior liens on the Debtors' post-petition assets. <u>See</u> Motion, at pp. 2, 6, 11 of 16.

16. The Debtors have not yet filed the form of Interim Order or the DIP Credit Agreement. <u>See</u> Motion, at p. 2 of 16.

### III. OBJECTION

17. Before approving debtor in possession financing, a court must determine whether the terms of the proposed financing are fair, reasonable and adequate. See In re Los Angeles Dodgers LLC, 457 B.R. 308, 312-13 (Bankr. D. Del. 2011).

18. In this respect, courts routinely consider the following factors: (i) whether the proposed facility is an exercise of the debtor's reasonable business judgment; (ii) whether the proposed facility is in the best interests of both the estate and its creditors; (iii) whether the transaction is both (a) necessary to preserve estate assets and (b) necessary and essential for the continued operation of the debtor's business; (iv) whether the terms of the proposed transaction are fair and reasonable given the circumstances; and (v) whether the proposed facility was negotiated in good faith and at arm's length. See In re Farmland Indus., Inc., 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003).

19. Courts recognize that debtors in possession often "enjoy little negotiating power." See In re Defender Drug Stores, Inc., 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992). Thus, bankruptcy courts have not approved financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the sole (or primary) benefit of a post-petition lender. See, e.g., Ames Dep't Stores, Inc., 115 B.R. 34, 38-39 (Bankr. S.D.N.Y. 1990) (citing In re Tenney Vill. Co., Inc., 104 B.R. 562, 568 (Bankr. D.N.H. 1989) (holding that the terms of a post-petition financing facility must not "pervert the reorganizational process from one designed to accommodate all classes of creditors . . . to one specially crafted for the benefit" of one creditor)).

20. Moreover, at an interim hearing on less than 14 days' notice, a court "may authorize obtaining of credit <u>only to the extent necessary to avoid immediate and irreparable harm</u> to the estate pending a final hearing." See Fed. R. Bankr. P. 4001(c)(2) (emphasis added).

21. Ultimately, the debtor bears the burden of proof when seeking financing under 11 U.S.C. § 364(c) and (d). See <u>In re Tamarack Resort, LLC</u>, 2010 WL 4117459, at *9 (Bankr. D. Idaho Oct. 19, 2010).

**A. <u>Consideration of the Motion Should Be Deferred Until the Debtors File the Form of Interim Order and the DIP Credit Agreement.</u>**

22. Federal Bankruptcy Rule 4001(c) sets forth a number of requirements regarding the contents of a motion to obtain post-petition financing. See Fed. R. Bankr. P. 4001(c); 9 <u>Collier on Bankruptcy</u> ¶ 4001.07 (16th ed. 2022) ("The rule has a number of requirements regarding the contents of a motion under Rule 4001(c).").

23. These requirements recognize that creditors "are entitled to know precisely what is being proposed and provided an opportunity to evaluate the facts, and legal sufficiency, of the request." See <u>In re Tamarack Resort, LLC</u>, 2010 WL 4117459, at *10.

24. Among the requirements of Rule 4001(c) is that the motion "must be accompanied by a copy of the credit agreement and a proposed form of Order". See Fed. R. Bankr. P. 4001(c)(1)(A); <u>see also</u> <u>In re Lo'r Decks at Calico Jacks, LLC</u>, 2010 WL 1965894, at *3 (Bankr. E.D.N.C. May 14, 2010) ("[T]he rule requires that a copy of the proposed credit agreement <u>must always</u> accompany the motion.") (emphasis added).

25. Here, the Motion includes the DIP Term Sheet as an exhibit. But no credit agreement or form of order has been filed. Accordingly, consideration of the Motion should be deferred until the Debtors file the form of Interim Order and the DIP Credit Agreement. Cf., <u>In re Lo'r Decks at Calico Jacks, LLC</u>, 2010 WL 1965894, at *3 ("Letters of Intent" did not meet

the requirements of Rule 4001(c), because they did not include material provisions of a credit agreement).

### B. The Proposed DIP Facility Contains Objectionable Provisions.

26. The UST objects to the DIP Facility on the following grounds:

   a. The Debtors have not demonstrated that it is necessary to borrow $16 million on an interim basis to avoid immediate and irreparable harm. See Fed. R. Bankr. P. 4001(c)(2). For instance, the first 4 weeks of the Budget reflect professional fees of more than $3 million, which presumably will not be approved until well after a final hearing. See ECF No. 64, at p. 16 of 173.

   b. Upon an event of default, it appears that the DIP Lenders would receive automatic relief from the automatic stay (subject only to giving five days' notice to the Debtors and other parties). See Motion, at p. 7 of 16. The Debtors have not demonstrated "substantial justification" for this relief. See Local Bankruptcy Rule 4001-(1)(c)(3)(H); see also In re Tenney Village Co., Inc., 104 B.R. at 568 (denying final approval of DIP financing agreement that would have, among other things, granted lender relief from the automatic stay unless the debtor obtained an order prohibiting foreclosure within a 7-day notice period).

   c. It appears that the DIP Liens would include liens on avoidance actions under Chapter 5 of the Bankruptcy Code, at least upon entry of the Final Order. Similarly, the proceeds of Avoidance Actions are not excluded from the scope of the DIP Lender's superpriority claim. See Motion, at pp. 2, 9-10 of 15. The Debtors have not demonstrated "substantial justification" for this relief. See Local Bankruptcy Rule 4001-1(c)(3)(J); Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV, 229 F.3d 245, 250 (3d Cir. 2000) ("When recovery is sought under section 544(b) of the Bankruptcy Code, any recovery is for the benefit of all unsecured creditors ….").

   d. Although the Motion references a Carve Out, presumably for professional fees and United States Trustee fees, the amount and terms of the Carve Out are set forth in the unfiled Interim Order and Final Order. See Motion, at p. 2 of 16; see also 11 U.S.C. §§ 1112(b)(4)(K), 1129(a)(12); In re Ames Dept. Stores, Inc., 115 B.R. at 38 ("[I]t has been the uniform practice in this Court … to insist on a carve out from a super-priority status and post-petition lien in a reasonable amount designed to provide for the payment of the fees of debtor's and the committees' counsel and possible trustee's counsel in order to preserve the adversary system.").

    e.    The proposed fees under the DIP Facility exceed $1.1 million. <u>See</u> Motion, at 5 of 16. These fees should not be approved without input of a creditors' committee. <u>Cf.</u> <u>In re Defender Drug Stores, Inc.</u>, 145 B.R. at 317 (A court's "discretion to authorize incentives to postpetition lenders is not unfettered.").

    f.    No proceeds of the DIP Facility may be used to investigate or pursue claims against the DIP Lender. <u>See</u> ECF No. 64, at p. 5 of 173. This restriction may impair the adversarial process contemplated by the Bankruptcy Code. <u>See</u> <u>In re Tenney Village Co., Inc.</u>, 104 B.R. at 569 ("It is said that a Chapter 11 lender should not be required to finance the prosecution of claims against it. That is true. If the lender believes that this will occur, it can elect not to make the loan. <u>It cannot expect, however, to change the rules of a Chapter 11 case</u>.") (emphasis added).

    g.    The DIP Facility appears to contemplate a waiver of claims against the DIP Lender. <u>See</u> Motion, at p. 8 of 16. The Debtors have not demonstrated "substantial justification" for this relief. <u>See</u> Local Bankruptcy Rule 4001-1(c)(3)(F).

    h.    The DIP Facility has milestones and events of default that may "operate to divest the debtor-in-possession of any discretion in the formulation of a plan or administration of the estate or limit access to the court to seek any relief under other applicable provisions of law." <u>See</u> Local Bankruptcy Rule 4001-1(c)(3)(E). For instance, it is an Event of Default if the Debtors file a plan "that is not in form and substance satisfactory to the DIP Agent." <u>See</u> Motion, at p. 8 of 16; ECF No. 64, at p. 9 of 63.

///

///

///

## IV. CONCLUSION

27. The UST respectfully requests that this Court sustain the Objection and deny the Motion, unless the Motion is modified to address the UST's concerns. The UST reserves all his rights, including to object to final approval of the Motion.

Dated: December 10, 2025.

                                            Respectfully submitted,

                                            PETER C. ANDERSON
                                            UNITED STATES TRUSTEE

                                            By:/s/ Jason Blumberg_____
                                            JASON BLUMBERG
                                            Trial Attorney for the United States Trustee