**59**

KEITH C. OWENS (SBN 184841)
kowens@foxrothschild.com
NICHOLAS A. KOFFROTH (SBN 287854)
nkoffroth@foxrothschild.com
**FOX ROTHSCHILD LLP**
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:      (310) 598-4150
Facsimile:      (310) 556-9828

*Proposed Counsel to Oroville Hospital, et al.,*
*the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| In re: | Lead Case No. 25-26876 |
| OROVILLE HOSPITAL, *et al.*,[1] | Jointly Administered With: Case No. 25-26877 |
|           Debtors and Debtors in Possession. | **DCN NAK-7** |
| | Chapter 11 |
| ☒  Affects All Debtors | Hon. Christopher D. Jaime |
| ☐  Affects Oroville Hospital | |
| ☐  Affects OroHealth Corporation: A Nonprofit Healthcare System | |
|           Debtors and Debtors in Possession. | |

**CERTIFICATE OF SERVICE**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Oroville Hospital (4554) and Orohealth Corporation: A Nonprofit Healthcare System (4776). The mailing address for the Debtors is 2767 Olive Highway, Oroville, California, 95966.

- 1 -

180277657.1

I, ANGELA CHACHOFF, hereby certify that:

1.　　I am employed as a Case Manager by Epiq Corporate Restructuring, LLC, with their principal office located at 777 Third Avenue, New York, New York 10017. I am over the age of eighteen and am not a party to the above-captioned action.

2.　　On December 10, 2025, I caused to be served the "Supplemental Exhibit in Support of Debtors' Emergency Motion for [*sic*] Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief," dated December 10, 2025, *related to Docket No. 82*, a copy of which is annexed hereto as <u>Exhibit A</u>, by causing true and correct copies to be:

　　　　a. enclosed securely in separate postage pre-paid envelopes and delivered via overnight mail to those parties listed on the annexed <u>Exhibit A</u>, and

　　　　b. delivered via electronic mail to those parties listed on the annexed <u>Exhibit B</u>.

3.　　All envelopes utilized in the service of the foregoing contained the following legend: "LEGAL DOCUMENTS ENCLOSED. PLEASE DIRECT TO THE ATTENTION OF ADDRESSEE, PRESIDENT OR LEGAL DEPARTMENT."

*/s/ Angela Chachoff*
Angela Chachoff

180277657.1

**EXHIBIT A**

**47**

KEITH C. OWENS (SBN 184841)
kowens@foxrothschild.com
NICHOLAS A. KOFFROTH (SBN 287854)
nkoffroth@foxrothschild.com
**FOX ROTHSCHILD LLP**
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:    (310)    598-4150
Facsimile:    (310)    556-9829

*Proposed Counsel to Oroville Hospital, et al.,*
*the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| In re: | Lead Case No. 25-26876 |
| | Jointly Administered With: |
| OROVILLE HOSPITAL, *et al.*,[1] | Case No. 25-26877 |
|     Debtors and Debtors in Possession. | **DCN NAK 7** |
| | Chapter 11 |
| ☒  Affects All Debtors | Hon. Christopher D. Jaime |
| ☐  Affects Oroville Hospital | <u>Hearing Date</u>: December 11, 2025 |
| ☐  Affects OroHealth Corporation: A Nonprofit Healthcare System | <u>Hearing Time</u>: 11:00 a.m. |
| | <u>Location</u>:    Courtroom 32 |
|     Debtors and Debtors in Possession. |            501 I Street, Suite 3-200 |
| |            Sacramento, California 95814 |

**SUPPLEMENTAL EXHIBIT IN SUPPORT OF DEBTORS'**
**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE DEBTORS TO (A) OBTAIN SENIOR SECURED**
**POSTPETITION FINANCING, (B) USE CASH COLLATERAL, AND**
**(C) GRANT LIENS AND PROVIDE SUPERPRIORITY ADMINISTRATIVE**
**EXPENSE CLAIMS; (II) GRANTING ADEQUATE PROTECTION TO CERTAIN**
**PREPETITION SECURED PARTIES; (III) MODIFYING THE AUTOMATIC STAY;**
**(IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Oroville Hospital (4554) and OroHealth Corporation: A Nonprofit Healthcare System (4776). The mailing address for the Debtors is 2767 Olive Highway, Oroville, California, 95966.

1    Oroville Hospital (the "<u>Hospital</u>") and OroHealth Corporation ("<u>OroHealth</u>"), as debtors

2  (collectively the "<u>Debtors</u>") in the above-captioned bankruptcy cases (the "<u>Bankruptcy Cases</u>"),

3  hereby submit the following supplemental exhibit in support of the *Debtors' Emergency Motion for*

4  *Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Postpetition*

5  *Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative*

6  *Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III)*

7  *Modifying The Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief*

8  (the "<u>Motion</u>"):

| Exhibit | Description | Pages |
|---------|-------------|-------|
| D | [*Proposed*] Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying The Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief | 3-47 |

Dated: December 10, 2025                    **FOX ROTHSCHILD LLP**


                                            */s/Nicholas A. Koffroth*
                                            _____
                                            Keith C. Owens
                                            Nicholas A. Koffroth

                                            *Proposed Counsel to Oroville Hospital, et al.,*
                                            *the Debtors and Debtors-in-Possession*

## **EXHIBIT D**

**[Proposed Interim Order]**

KEITH C. OWENS (SBN 184841)
kowens@foxrothschild.com
NICHOLAS A. KOFFROTH (SBN 287854)
nkoffroth@foxrothschild.com
**Fox Rothschild LLP**
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:     (310) 598-4150
Facsimile:     (310) 556-9828
*Proposed Counsel to Oroville Hospital, et al.,*
*the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| In re: | Lead Case No. 25-26876 |
| OROVILLE HOSPITAL, *et al.*,[2] | Jointly Administered With: Case No. 25-26877 |
| Debtors and Debtors in Possession. | **DCN NAK 7** |
| | Chapter 11 |
| ☒ Affects All Debtors | Hon. Christopher D. Jaime |
| ☐ Affects Oroville Hospital | **Hearing Information** |
| ☐ Affects OroHealth Corporation: A Nonprofit Healthcare System | |
| Debtors and Debtors in Possession. | Hearing Date:  December 11, 2025 |
| | Hearing Time:  11:00 a.m. |
| | Location:      Courtroom 32 |
| | 501 I Street |
| | Sacramento, California 95814 |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (III) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES; (V) MODIFYING THE AUTOMATIC STAY; (VI) SCHEDULING A FINAL HEARING; AND (VII) GRANTING RELATED RELIEF**

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Oroville Hospital (4554) and OroHealth Corporation: A Nonprofit Healthcare System (4776). The mailing address for the Debtors is 2767 Olive Highway, Oroville, California, 95966.

Upon the motion (the "**Motion**"), dated December 9, 2025, of Oroville Hospital (the "**Hospital**") and Orohealth Corporation: A Nonprofit Healthcare System ("**OroHealth**"), debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Case**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) , 503, 506 and 552 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of California (the "**Local Rules**"), seeking, among other things:

(1)　　authorization for the Debtors to obtain post-petition delayed-draw term loans, advances and other financial accommodations up to **$16,000,000** on an interim basis for a period through and including the date of the Final Hearing (as defined below), and up to an aggregate of **$38,000,000** following entry of a final order approving the Motion (the "**Final Order**"), from Rosemawr Management LLC, in its capacities as administrative agent and collateral agent (the "**DIP Agent**") for itself and the DIP Lenders (as defined below) and from the DIP Lenders, in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the DIP Term Sheet (as defined below), and in accordance with this Order, secured by security interests in and liens upon all of the DIP Collateral (as defined below) pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code;

(2)　　authorization for the Debtors to enter into, be bound by, and perform under the debtor-in-possession credit facility (the "**DIP Facility**"), subject to the terms and conditions set forth in the DIP Term Sheet (defined below), or, as applicable, a Debtor-In-Possession Financing Agreement (as amended, restated, supplemented, or otherwise modified from time to time, the "**DIP Financing Agreement**" and together with any ancillary, collateral, or related documents and agreements, including this Interim Order, the "**DIP Loan Documents**"), which such DIP Financing Agreement shall be consistent with the terms set forth in the attached Binding Term Sheet for Debtor-

In-Possession Credit Facility, dated December 7, 2025, attached hereto as <u>Exhibit A</u> (as amended, restated, supplemented or otherwise modified from time to time, the "**DIP Term Sheet**");[3]

            (3)      modification of the automatic stay to the extent hereinafter set forth;

            (4)      the grant to the DIP Agent, for its benefit and the benefit of the DIP Lenders, of superpriority administrative claim status pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all obligations under the DIP Term Sheet and DIP Loan Documents (including, loans, fees, costs and any other obligations thereunder, the "**DIP Obligations**");

            (5)      authorization for the Debtors to use the proceeds of the DIP Facility and Cash Collateral (as defined below) in accordance with the Budget (as defined below) and subject to the terms, restrictions, and other conditions of the DIP Term Sheet;

            (6)      authorization for the Debtors to use the proceeds of the loans under the DIP Facility (the "**DIP Loans**"), subject to the terms, restrictions, and other conditions of the DIP Term Sheet, to (a) pay fees and expenses related to the DIP Term Sheet and the costs of administration of the Chapter 11 Case, and (b) fund working capital of the Debtors and other general corporate purposes, in each case, to the extent set forth in and limited by the Budget and permitted under the DIP Loan Documents;

            (7)      authorization for the payment of DIP Fees (as defined below) at the times and in the amounts set forth in the DIP Term Sheet;

            (8)      subject to the Carve-Out, the DIP Liens, and the Permitted Priority Liens (defined below), to provide Adequate Protection of the Prepetition Secured Liens of the Prepetition Secured Parties (each as defined below) on the terms as more fully set forth in this Interim Order; and

            (9)      the setting of a final hearing on the Motion;

    The initial hearing on the Motion having been held by this Court on December 11, 2025 (the "**Interim Hearing**"); and

---

[3] References to the "DIP Term Sheet" herein shall be construed to encompass the other DIP Loan Documents, if any, that the Debtors, DIP Agent and DIP Lenders execute, deliver or otherwise enter into before the entry of the Final Order. Unless otherwise defined herein, capitalized terms shall have the definitions set forth in the DIP Term Sheet.

It appearing that due and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (the "**Notice**") was served by the Debtors on (i) the Office of the U.S. Trustee; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis) filed in accordance with Bankruptcy Rule 1007(d); (iii) the agent for the DIP Lender and/or its counsel; (iv) the Prepetition Secured Creditors and/or their counsel; (v) the Master Trustee and/or its counsel; (v) the State of California through the Attorney General for the State of California; (vi) the United States of America through the United States Attorney for the Eastern District of California; and (vii) parties that file with the Court and serve upon the Debtor requests for notice of all maters in accordance with Bankruptcy Rule 2002(i) (collectively, the "**Notice Parties**").; and

This Court having reviewed the Motion and any responses and objections thereto, the *Declaration of Robert J. Wentz in Support of Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay;(IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. [●], *Declaration of James Moloney in Support of Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. [●], the *Declaration of Aaron Mursky in Support of Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay;(IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. [●]],and the *Declaration of Sean A. Gumbs in Support of Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II)*

*Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. [●], the other filings and pleadings made by the Debtors, the evidence and testimony presented at the Interim Hearing, and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

A. <u>Petition</u>. On December 8, 2025 (the "**Petition Date**"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The Debtors continue as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B. <u>Jurisdiction and Venue</u>. The Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and *General Order No. 182* and *General Order No. 223* of the United States District Court for the Eastern District of California. Venue in this Court over the Chapter 11 Case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. <u>Notice</u>. Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing and the relief granted under this Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c) and Local Rule 4001-2.

D. <u>Prepetition Secured Obligations with Respect to DIP Collateral</u>. The holders of Hospital Revenue Bonds, Series 2018 (the "**Series 2018 Bonds**") and the City of Oroville Revenue Bonds (Oroville Hospital), Series 2019 (the "**Series 2019 Bonds**" and, together with the Series 2018 Bonds, the "**Prepetition Secured Creditors**" or the "**Bonds**"), by and through UMB Bank, N.A., in its capacity as Master Trustee (the "**Master Trustee**") assert prepetition secured interests in the Prepetition Collateral (defined below), including certain of Oroville Hospital's accounts receivable, cash, other assets, and certain real property, as more fully identified in the Motion and the Prepetition Loan Documents (defined below).

E.     Findings Regarding the Post-Petition Financing.

(i)     *Postpetition Financing*.  The Debtors have requested from the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders are willing to extend, certain delayed-draw term loans, advances, and other financial accommodations on the terms and conditions set forth in this Order and the DIP Loan Documents.

(ii)     *Need for Postpetition Financing*.  The Debtors have an immediate need to obtain the DIP Facility and use Cash Collateral to, among other things, pay administrative expenses, including ordinary and necessary operating expenses for patient care and other business operations, and market and sell the Debtors' assets.  The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Agent and DIP Lenders as set forth in this Order and the DIP Loan Documents is vital to the Debtors' ability to operate post-petition and to maximize the value of the assets of their bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "**Estates**") through a sale process. Accordingly, the Debtors have an immediate need to obtain the postpetition financing in order to, among other things, fund ongoing operations and preserve and maximize the value of the assets of their Estates.

(iii)     *No Credit Available on More Favorable Terms*.  The Debtors are unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, or solely based on the grant of an administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code.  The Debtors are also unable to obtain secured credit allowable solely under section 364(c)(2) or 364(c)(3) of the Bankruptcy Code.  The Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Agent and the DIP Lenders pursuant to the DIP Term Sheet.

(iv)     *Priming of Prepetition Liens; Adequate Protection*.  As of the Petition Date, the Debtors were indebted to the Prepetition Secured Creditors under the Prepetition Loan

Documents[4] or other applicable law, and such obligations were secured by liens and security interests granted by the Debtors or otherwise arising under applicable law (all such liens and security interests, the "**Prepetition Secured Liens**") on and in the assets of the Debtors to the extent set forth under the Prepetition Loan Documents or such applicable law (all such assets, the "**Prepetition Collateral**") including cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").  The priming of the security interests in and liens on the Prepetition Collateral and any other interests of the Debtors' property specified in the DIP Term Sheet under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Term Sheet and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their business for the benefit of their Estates and creditors, and the Debtors would not be able to obtain postpetition financing in a sufficient amount without granting such priming liens.  Consistent with the requirements of section 364(d) of the Bankruptcy Code, and without waiving the Debtors' or any other parties' right to assert any challenges, causes of action, and claims against the Prepetition Secured Parties, the Prepetition Secured Parties shall receive adequate protection as set forth in this Interim Order, pursuant to sections 361, 363, and 364 of the Bankruptcy Code, solely to the extent of the aggregate diminution in value (as determined pursuant to the Bankruptcy Code), if any, in the value of the Prepetition Collateral.

(v)      *Budget*.  The Debtors have prepared and delivered to the DIP Agent and the DIP Lenders an initial thirteen-week budget, a copy of which is attached hereto as <u>Annex 1</u> (the "**Initial DIP Budget**").  The Initial DIP Budget has been approved by the DIP Agent and the DIP Lenders pursuant to the terms of the DIP Term Sheet and constitutes an "Approved Budget" under the terms of and as defined in the DIP Term Sheet.  The Initial DIP Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, projections for the periods covered thereby.  The DIP Agent and the DIP Lenders are relying upon the Debtors' compliance with the Initial DIP Budget in accordance with the terms of the DIP Term Sheet, the other

[4] The "**Prepetition Loan Documents**" means the Master Indenture of Trust, dated as of February 1, 2019, by and between Hospital and UMB Bank, N.A. (as successor to The Bank of New York Mellon Trust Company, N.A.) together with certain related amendments and supplements to the Series 2018 Bond documents and the Series 2019 Bond documents.

DIP Loan Documents and this Interim Order in determining to enter into the post-petition financing arrangements provided for herein.

(vi)     *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The terms of the DIP Loan Documents and this Order reflect the Debtors' exercise of their prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the DIP Loan Documents and this Order have been negotiated in good faith and at arms' length by and among the Debtors, on the one hand, and the DIP Agent and the DIP Lenders, on the other hand, with all parties being represented by counsel.  The DIP Agent and the DIP Lenders are third parties unconnected to the Debtors.  Any credit extended under the terms of this Order shall be deemed to have been extended in good faith by the DIP Agent and the DIP Lenders as that term is used in section 364(e) of the Bankruptcy Code.

(vii)     *Good Cause*.  The relief requested in the Motion is necessary, essential, and appropriate, and is in the best interests of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and avoid immediate and irreparable harm to the Debtors, their patients, their creditors, and their assets.

(viii)     *Immediate Entry*.  Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2) and Local Rule 4001-2(b).  No party appearing in the Chapter 11 Case has filed or made an objection to the relief sought in the Motion or the entry of this Order, or any objections that were made (to the extent such objections have not been withdrawn or resolved) are hereby overruled in their entirety.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.          Authorization and Conditions to Financing.

1.1          Motion Granted.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Order.  This Order shall hereinafter be referred to as the "**Interim Order**."

1.2          Authorization to Borrow and Use Loan Proceeds.  The Debtors are hereby authorized to enter into, be bound by, and perform under the DIP Facility and all DIP Loan Documents and to immediately borrow, pursuant to the DIP Term Sheet, an aggregate amount of delayed-draw term loans not to exceed **$16,000,000**, on an interim basis, provided that disbursements of such amount are in accordance with the Initial DIP Budget or any subsequent Approved Budget (any such budget, whether the Initial DIP Budget or a subsequent Approved Budget, to the extent currently in force, the "**Budget**"), the DIP Loan Documents, and this Interim Order.  Upon the entry of this Interim Order, the Debtors shall be authorized to use the Cash Collateral and to draw on the DIP Facility to make any disbursement as specifically provided in the Budget (subject to the permitted variances as set forth in the DIP Loan Documents), but solely in accordance with the terms and conditions set forth in this Interim Order and the DIP Loan Documents.

1.3          DIP Loan Documents

1.3.1          Approval.  The DIP Loan Documents and each term, condition, and covenant set forth therein are approved.  All of such terms, conditions, and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtors, the DIP Agent, and the DIP Lenders, and of the Debtors' assumption and adoption of all of the terms, conditions, and covenants of the DIP Term Sheet and the other DIP Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment when due of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, and such fees and expenses, including, without limitation, all of the DIP Agent's and the DIP Lenders' professional fees (including attorney fees and expenses), as more fully set forth in the DIP Loan Documents.

1.3.2          Amendment.  Subject to the terms and conditions of the DIP Term Sheet, the other DIP Loan Documents, and this Interim Order, the Debtors, the DIP Agent, and the

DIP Lenders may amend, modify, supplement, or waive any provision of the DIP Loan Documents (an "**Amendment**") without further approval or order of the Court and shall provide not less than two (2) business days prior written notice of any Amendment and the proposed effective date thereof to (i) counsel to the Committee, if any, (ii) the Prepetition Secured Creditors, and (iii) the U.S. Trustee; provided that any material Amendment shall also be filed with the Court not less than two business days prior to the proposed effectiveness of such Amendment and shall require Court approval.

Section 2.    Liens; Superpriority Administrative Claim Status.

2.1    DIP Liens.  As security for the DIP Obligations, effective and automatically properly perfected on the date this Interim Order is entered, and without the necessity of execution, recordation, or filing of any perfection document or instrument, or the possession or control by the DIP Agent of, or over, any DIP Collateral, without any further action by the DIP Agent, the following valid, binding, continuing, fully perfected, enforceable, and non-avoidable security interests and liens (the "**DIP Liens**") are hereby granted to the DIP Agent (all property identified in clauses 2.1.1 through 2.1.4 below being collectively referred to as the "**DIP Collateral**"):

2.1.1    Liens Senior to Certain Other Liens.  Pursuant to section 364(c)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected, first priority security interest and lien ("**DIP First Priority Priming Liens**") upon all encumbered assets of the Debtors, whether now owned or existing or hereafter acquired, created, or arising and wherever located (other than the Mortgaged Property (as defined below)), which DIP First Priority Priming Liens shall be first and senior in priority to all other interests and liens of every kind, nature, and description, whether created consensually or otherwise, including, without limitation, the Prepetition Secured Liens, liens or interests granted in favor of third parties in conjunction with section 363, 364 or any other section of the Bankruptcy Code or other applicable law, but subject only to the Carve-Out.

2.1.2    Liens on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected, first priority security interest and lien (the "**DIP Priority Lien**" and together with the DIP First Priority Priming Liens, the "**DIP Senior Liens**") upon all unencumbered assets of the Debtors, whether now owned or existing or hereafter acquired, created, or arising and wherever located, other than (a) claims and

causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "**Avoidance Actions**") but including, subject to entry of the Final Order, any proceeds or property recovered as a result of any Avoidance Actions, whether by judgment, settlement, or otherwise (the "**Avoidance Proceeds**"), which DIP Priority Liens shall be first and senior in priority to all other interests and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, subject only to the Carve-Out.

2.1.3   <u>Liens Junior to Certain Other Liens.</u>  Pursuant to section 364(c)(1) and (c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien (the "**DIP Junior Liens**") upon the real estate property set forth on Schedule I to the DIP Term Sheet (the "**Mortgaged Property**") subject to valid, enforceable, properly perfected and non-avoidable liens in existence as of the Petition Date that are senior in priority to any other Prepetition Secured Liens (such liens, the "**Permitted Priority Liens**"), which DIP Junior Liens shall be junior to the Permitted Priority Liens, but senior to all other liens, claims, or security interests that any other creditor of any of the Debtors and their Estates may have on the Mortgaged Property, but subject only to the Carve-Out.

2.1.4   The DIP Liens and the DIP Superpriority Claim (as defined below) (a) shall not be subject to sections 510, 542, 549, 550, or 551 of the Bankruptcy Code, (subject to entry of the Final Order) the "equities of the case" exception of section 552 of the Bankruptcy Code, or (subject to entry of the Final Order) section 506(c) of the Bankruptcy Code, (b) shall be senior in priority and right of payment to (x) any other claim in the Chapter 11 Case, including with respect to Prepetition Secured Liens, but subject to the Carve-Out and claims on account of the Permitted Priority Liens (solely with respect to the Mortgaged Property), (y) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise, and (z) any intercompany or affiliate liens or claims of the Debtors, and (c) shall be valid and enforceable against any trustee or any other estate representative appointed or elected in the Chapter 11 Case, upon the conversion of any Chapter 11 Case to a case under chapter 7 of the

1  Bankruptcy Code, or in any other proceedings related to the foregoing (each, a "**Successor Case**"),

2  and/or upon the dismissal of the Chapter 11 Case or any Successor Case.

3          2.2     <u>Enforceable Obligations</u>.     The DIP Loan Documents shall constitute and

4  evidence the valid and binding DIP Obligations of the Debtors, which DIP Obligations shall be

5  enforceable against the Debtors, their Estates, and any successors thereto (including, without

6  limitation, any trustee or other estate representative in any Successor Case), and its creditors, in

7  accordance with their terms.  No obligation, payment, transfer, or grant of security under the DIP

8  Term Sheet, the other DIP Loan Documents, or this Interim Order shall be stayed, restrained,

9  voidable, avoidable, disallowable, or recoverable under the Bankruptcy Code or under any applicable

10  law (including, without limitation, under section 502(d) or based on any Avoidance Actions), or

11  subject to any avoidance, disallowance, impairment, reduction, setoff, offset, recoupment,

12  recharacterization, disgorgement, subordination (whether equitable, contractual, or otherwise),

13  counterclaim, cross-claim, defense, surcharge, or any other challenge under the Bankruptcy Code or

14  any applicable law or regulation by any person or entity.

15          2.3     <u>Post-Petition Lien Perfection</u>.  This Interim Order shall be sufficient and

16  conclusive evidence of the priority, perfection, and validity of the DIP Liens, effective as of the

17  Petition Date, without any further act and without regard to any other federal, state, or local

18  requirements or law requiring notice, filing, registration, recording, or possession of the DIP

19  Collateral, or other act to validate or perfect such security interest or lien (each, a "**Perfection Act**").

20  Notwithstanding the foregoing, if the DIP Agent shall, in its sole discretion, elect for any reason to

21  file, record, or otherwise effectuate any Perfection Act, the DIP Agent is authorized to perform such

22  act, and the Debtors are authorized to perform such act to the extent necessary or reasonably required

23  by the DIP Agent, which act or acts shall be deemed to have been accomplished as of the Petition

24  Date, notwithstanding the date and time actually accomplished, and in such event, the subject filing

25  or recording office is authorized to accept, file, and/or record any document in regard to such act in

26  accordance with applicable law.  The DIP Agent, on behalf of the DIP Lenders, may choose to file,

27  record, or present a certified copy of this Interim Order in the same manner as a Perfection Act, which

28  shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is

1   authorized to accept, file, and/or record such certified copy of this Interim Order in accordance with

2   applicable law.  Should the DIP Agent so choose and attempt to file, record, and/or perform a

3   Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or

4   alter the validity, enforceability, attachment, or perfection of the post-petition liens and security

5   interests granted herein by virtue of the entry of this Interim Order.

6          2.4    Superpriority Administrative Expense.  For all DIP Obligations now existing

7   or hereafter arising pursuant to this Interim Order, the DIP Loan Documents, or otherwise, the DIP

8   Agent, for the benefit of itself and the other DIP Lenders, is granted an allowed superpriority

9   administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right

10  of payment over any and all other obligations, liabilities, and indebtedness of the Debtor, whether

11  now in existence or hereafter incurred by the Debtor, and over any and all administrative expenses or

12  priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330,

13  331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 364(c)(1), 546, 726,

14  or 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may

15  become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "**DIP**

16  **Superpriority Claim**"); provided, however, that the DIP Superpriority Claim:  (a) shall be subject

17  only to the payment of the Carve-Out; (b) shall be junior and subordinate to claims in respect of the

18  Permitted Priority Liens only with respect to the Mortgaged Property; and (c) shall be payable out of

19  the Avoidance Proceeds upon entry of the Final Order.  The DIP Superpriority Claim shall, for

20  purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense

21  allowed under section 503(b) of the Bankruptcy Code, shall be against the Debtors, and shall be

22  payable from and have recourse to all prepetition and postpetition property of the Debtors and all

23  proceeds thereof (including, subject to entry of the Final Order, Avoidance Proceeds), subject to the

24  Carve-Out and Permitted Priority Liens (solely in the case of the Mortgaged Property).  Other than

25  as expressly provided in the DIP Term Sheet and this Interim Order with respect to the Carve-Out,

26  no costs or expenses of administration, including, without limitation, professional fees allowed and

27  payable under sections 326, 328, 330, or 331 of the Bankruptcy Code, or otherwise, that have been

28  or may be incurred in the Chapter 11 Case, or in any Successor Case, and no priority claims are, or

will be, senior to, prior to, or on a parity with the DIP Superiority Claim or the DIP Obligations, or with any other claims of the DIP Agent or DIP Lenders arising hereunder.

        2.5   <u>Carve-Out</u>.  Notwithstanding anything in this Interim Order or the DIP Loan Documents to the contrary, upon the delivery by the DIP Agent to the Debtors' general bankruptcy counsel, counsel for the Master Trustee, the U.S. Trustee, and lead counsel to the official committee of unsecured creditors appointed in this case (a "**Committee**") of written notice that the Carve-Out (defined below) has been invoked (such notice, the "**Carve-Out Trigger Notice**") identifying an Event of Default (the date upon which such notice is delivered to the Debtors' lead counsel, the "**Carve-Out Trigger Date**"), the DIP Obligations, the DIP Agent's and the DIP Lenders' liens, claims, and security interests in the DIP Collateral and the DIP Superiority Claim, and the Prepetition Secured Obligations, the Prepetition Secured Creditors' liens, claims, and security interests in the Prepetition Collateral, and the Adequate Protection Superiority Claim, shall, in each instance, be subject to the right of payment of the following expenses (without any duplication of fees and expenses of any professionals in connection with any services rendered to more than one Debtor) (the "**Carve-Out**"):

        a.   all incurred or accrued professional fees and expenses of professionals for the Debtors and professionals for the Committee, if any, to the extent (i) allowed at any time by the Bankruptcy Court (if required), regardless of whether allowed by interim order, procedural order, or otherwise, (ii) incurred or accrued through the Carve-Out Trigger Date, to the extent allowed prior to or after the Carve-Out Trigger Date and (iii) up to and as limited by the respective aggregate amounts for each professional for the Debtors and each professional for the Committee, if any, or category of professionals for the Debtors and category of professionals for the Committee, if any, set forth in the Budget through the Carve-Out Trigger Date, and, upon being earned and payable, the success fees payable to Cain Brothers ("**Cain Brothers**") per the terms of its engagement letter and any order of the Court approving such engagement, in each case less the amount of any prepetition retainers received by such professionals and not previously applied to fees and expenses (for

clarity, all requirements in the foregoing clauses (i) through (iii) must be satisfied for the inclusion of the fees and expenses described by this clause (a) in the Carve-Out);

b.    all accrued and unpaid fees, disbursements, costs, and expenses incurred by the professionals for the Debtors from and after the Carve-Out Trigger Date, to the extent allowed at any time, in an aggregate amount not to exceed $150,000.00 less the remaining amount of prepetition retainers received by such professionals not previously applied to the fees, disbursements, costs, and expenses set forth in clause (a)(ii) above;

c.    all accrued and unpaid fees, disbursements, costs, and expenses incurred by the professionals for the Committee from and after the Carve-Out Trigger Date, to the extent allowed at any time, in an aggregate amount not to exceed $50,000.00; and

d.    allowed administrative expenses (i) for fees payable to the Office of the U.S. Trustee pursuant to 28 USC §1930(a)(6) and (ii) for fees required to be paid to the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 156(c), in each case plus interest at the applicable statutory rate.

Prior to the Carve-Out Trigger Date:  (A) an amount sufficient to pay the Carve-Out set forth in clause (a) above may be funded by the Debtors on a weekly basis into a trust account held by Debtors' counsel (the "**Professional Fee Trust Account**") in accordance with the approved Budget, (B) the Debtors shall be permitted to use the proceeds of the DIP Facility to fund the Professional Fee Trust Account in the amounts contemplated under clause (a) above, and (C) the Debtors shall be permitted to pay, from the Professional Fee Trust Account, as and when the same may become due and payable in accordance with the Budget and any order of the Court, the allowed professional fees of each Debtor and Committee professional.  Following the Carve-Out Trigger Date, the Debtors shall be permitted to use the proceeds of the DIP Facility to fund the Professional Fee Trust Account for all payments under the Carve-Out set forth in clause (a) above to the extent not previously funded, but only for the period prior to the Carve-Out Trigger Date.  Any excess amounts remaining in the Professional Fee Trust Account after payment of the Carve-Out shall be refunded to the Debtors and shall remain DIP Collateral.  Notwithstanding the foregoing, none of the Carve-Out, proceeds from the DIP Facility, or Cash Collateral may be used, including, but not limited to, by the Debtors or the

Committee, if any, (i) to delay, challenge, or impede any rights of the DIP Agent and DIP Lenders under any of the DIP Loan Documents or this Interim Order or to object to or oppose any action authorized under the DIP Loan Documents, this Interim Order, or the Final Order; or (ii) to pursue any claims or causes of action of any kind against the DIP Agent or the DIP Lenders, in their capacity as agents or lenders under the DIP Loan Documents.

2.6     Use of Cash Collateral.  Subject to the terms and conditions of this Interim Order, the DIP Term Sheet, and the other DIP Loan Documents, the Debtors shall be and are hereby authorized to use, in accordance with the Budget, Cash Collateral and the proceeds of the DIP Facility to, (a) pay fees and expenses related to the DIP Term Sheet and the other DIP Loan Documents, and (b) fund working capital to maintain and, as applicable, operate the Debtors' business and for other general corporate purposes, in each case, to the extent set forth in the Budget and permitted under the DIP Loan Documents.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or the Debtors' use of Cash Collateral, the proceeds of the DIP Facility, or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Term Sheet, the other DIP Loan Documents, or the Budget.  In accordance with the provisions of the DIP Term Sheet (and without limiting the Debtors' obligations thereunder), the Debtors shall timely deliver to the DIP Agent updated cash flow forecasts and Variance Reports (as defined in the DIP Term Sheet) and comply with all other reporting covenants and obligations described in the DIP Term Sheet.

Section 3.     Approval of DIP Fees

3.1     In consideration for the DIP Facility, the DIP Lender shall be paid all fees, expenses, and other amounts payable under the DIP Term Sheet as such become due, including, without limitation, the Upfront Fee (which shall be fully earned and allowed upon entry of this Interim Order and paid in full in cash from the proceeds of the "Initial Draw," as that term is defined in the DIP Term Sheet), the Exit Fee, and the reasonable and documented fees and expenses of the DIP Lender in connection with the DIP Facility (all such fees, together, the "**DIP Fees**"). Upon entry of this Interim Order, the DIP Fees are approved, on a final basis, and are deemed to be allowed, fully

earned, non-refundable, and payable in accordance with the terms of the DIP Term Sheet without the need for any further order of this Court. The DIP Fees shall be part of the DIP Obligations.

Section 4.    Authorization to Pay Professional Fees of DIP Agent and DIP Lenders.

4.1    The Debtors shall pay, no later than seven (7) days following receipt by the Debtors of any invoice (which may be provided in summary fashion or redacted to protect privilege), with a copy to the Committee, if any, and U.S. Trustee: any and all fees paid or required to be paid in connection with the DIP Loan Documents (including, but not limited to, the professional fees and expenses of the DIP Agent and the DIP Lenders); provided, however, that no payment shall be made by the Debtors if an objection is made by the Debtors, the Committee, if any, or the U.S. Trustee within the seven (7) day period (except to the extent such fees and expenses are not subject to the objection) unless consensually resolved by the affected professional and objecting party or approved by the Court. The fees and expenses paid hereunder shall not otherwise be subject to separate approval by the Court or to the United States Trustee Guidelines. All unpaid fees, costs, and expenses of the DIP Agent and the DIP Lenders shall be included in and constitute part of the DIP Superpriority Claims and be secured by the DIP Liens.

Section 5.    Sale Process.

5.1    Sale Process. The Debtors shall conduct a process to sell (the "**Sale**") substantially all or all of their assets (the "**Acquired Assets**"). Subject to the entry of the Final Order, Permitted Priority Liens, and the Carve-Out, the Debtors are authorized to immediately and indefeasibly distribute directly (or cause any purchaser of the Acquired Assets to immediately and indefeasibly distribute directly) to the DIP Agent for its benefit and the benefit of the DIP Lenders, the proceeds from the Sale of the Acquired Assets (other than with respect to proceeds attributable to the Mortgaged Property to the extent subject to a Permitted Priority Lien), up to the amount of the DIP Obligations outstanding as of the closing of the Sale, including, but not limited to, principal, accrued and unpaid interest, and all outstanding fees and expenses (except to the extent such DIP Obligations are credit bid as part of a purchase of the Acquired Assets as authorized by Section 5.3 below).

5.2     Milestones.  As a condition to funding under the DIP Facility, the Debtors shall achieve the Milestones as set forth in the DIP Term Sheet, in each case in a manner satisfactory to the DIP Agent.

5.3     Credit Bid Rights.  Subject to entry of the Final Order, in connection with any Sale, the DIP Agent shall have the right to credit bid with respect to the DIP Collateral any portion or all of the Debtors' outstanding DIP Obligations pursuant to Bankruptcy Code section 363(k), and any bid submitted by the DIP Agent shall be deemed a "qualified bid" under any bidding procedures entered in this Chapter 11 Case, subject to payment of the Carve-Out and the Permitted Priority Liens.

Section 6.     Cash Management System; Control Over Debtor's Accounts.  The Debtors shall maintain their existing cash management system to the extent set forth in the DIP Loan Documents unless the DIP Agent, in its sole and absolute discretion, consents in writing to any proposed modification to such cash management system; provided, however, that the Debtors shall be authorized, at the direction of the DIP Agent, to enter into amendments to their existing cash management agreements.  The DIP Agent shall be deemed without any further action of any kind, to have "control" over all of the Debtors' deposit accounts within the meaning of Sections 8-106, 9-104, 9-105, 9-106, 9-107, and 9-314 of the New York Commercial Code.

Section 7.     Proof of Claim.  Any order entered, or to be entered, by the Court concerning the establishment of a bar date for the filing of any claims or administrative expenses in the Chapter 11 Case or in any Successor Case shall not apply to the DIP Agent or the DIP Lenders.

Section 8.     Default; Rights and Remedies; Relief from Stay.

8.1     Events of Default.  The occurrence and continuation of any of the following events, unless waived by the DIP Agent in its sole discretion, shall constitute an "**Event of Default**" under this Interim Order and the DIP Loan Documents, and the DIP Agent shall provide notice of any such Event of Default to the Debtors, the U.S. Trustee, and lead counsel to the Committee, if any:

a.     the failure to make a payment required under the DIP Term Sheet, DIP Loan Documents, or this Interim Order,

b.     non-compliance with covenants set forth in the DIP Term Sheet;

        c.      non-compliance with any Permitted Variance or failure to timely deliver a Variance Report,

        d.      the failure to meet any Milestone;

        e.      the dismissal of the Chapter 11 Case or the conversion of any Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

        f.      non-compliance, subject to any applicable grace and/or cure periods, by the Debtors with the terms of this Interim Order;

        g.      the entry of an order staying, reversing, vacating, or otherwise modifying this Interim Order without the prior written consent of the DIP Agent;

        h.      the entry of an order appointing a trustee, or an examiner having expanded powers (beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) under section 1104 of the Bankruptcy Code (other than a fee examiner) in the Chapter 11 Case, or the entry of an order providing for such appointment, in each case without the prior written consent of the DIP Agent in its sole discretion;

        i.      the entry of an order in any Chapter 11 Case granting relief from any stay or proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure against any of the DIP Collateral the fair market value of which exceeds $100,000; provided, however, that foreclosure related to any leased equipment with a fair market value that exceeds $100,000 will not constitute an event of default if such foreclosure would not cause a material adverse effect with respect to the Debtors' operations;

        j.      the entry of an order (a) surcharging any of the DIP Collateral under sections 105, 506(c), or any other section of the Bankruptcy Code, (b) allowing any administrative expense claim having priority over or ranking in parity with the DIP Superiority Claim or the rights of the DIP Agent (subject to the Carve-Out), or (c) otherwise adversely impacting the DIP Agent's liens and priority in the DIP Collateral as set forth in the DIP Term Sheet;

        k.      any action by any Debtor to (a) challenge the rights and

remedies of the DIP Agent or any DIP Lender under the DIP Loan Documents in the Chapter 11 Case or acting in a manner inconsistent with the DIP Loan Documents, or (b) avoid or require disgorgement by the DIP Agent or any DIP Lender of any amounts received in respect of the DIP Obligations;

l.      entry of an order without the express written consent of the DIP Agent obtaining additional financing from a party other than the DIP Agent and the DIP Lenders under section 364(d) of the Bankruptcy Code except if such financing provides for the payment in full, in cash, of the DIP Obligations;

m.      the making of any material payments in respect of prepetition obligations other than (a) as permitted by the Interim Order or the Final Order, (b) as permitted by any "first day" or "second day" orders reasonably satisfactory to the DIP Agent, (c) as permitted by any other order of the Bankruptcy Court reasonably satisfactory to the DIP Agent, (d) as permitted under the DIP Loan Documents in accordance with the Approved Budget (defined below), or (e) as otherwise agreed to by the DIP Agent;

n.      entry of an order terminating or modifying the exclusive right of any Debtor to file a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code, without the prior written consent of the DIP Agent;

o.      the Debtors shall seek to, or support any other person's motion to, (a) disallow in whole or in part the DIP Obligations, or (b) challenge the validity and enforceability of the DIP Liens;

p.      any Debtor files a Plan that is not in form and substance satisfactory to the DIP Agent,

q.      any Debtor files a motion seeking to settle a controversy or claim on account of the DIP Collateral in an amount exceeding $100,000 without the prior written consent of the DIP Agent;

r.      any Debtor files a motion for the Bankruptcy Court to approve a sale of the DIP Collateral pursuant to section 363 of the Bankruptcy Code which proposed sale is not reasonably acceptable to the DIP Agent;

s.     any Debtor shall fail to execute and deliver to the DIP Agent any agreement, financing statement, trademark filing, copyright filing, notices of lien, or similar instruments or other documents that the DIP Agent may reasonably request from time to time to more fully evidence, confirm, validate, perfect, preserve, and enforce the DIP Liens created in favor of the DIP Agent;

t.     any Debtor's failure to perform, in any respect, any of the terms, conditions, or covenants or its obligations under this Interim Order; or

u.     any other "Event of Default" as defined in and under the DIP Term Sheet or any of the other DIP Loan Documents.

8.2     <u>Rights and Remedies Upon Event of Default</u>.  Upon the occurrence and during the continuance of an Event of Default, (i) the Debtors shall be bound by all restrictions, prohibitions, and other terms as provided in this Interim Order, the DIP Term Sheet, and the other DIP Loan Documents, (ii) the DIP Agent, on behalf of itself and the DIP Lenders, shall be entitled to take any act or exercise any right or remedy (subject to Section 8.4 below) as provided in this Interim Order or the DIP Loan Documents,  and (iii) subject to Section 8.4 below, the Debtors' right to use Cash Collateral and the proceeds of the DIP Facility shall thereupon and without further action of any kind terminate pending further order of the Court; <u>provided</u>, <u>however</u>, that none of the foregoing shall restrict the payment of the Carve-Out or postpetition accrued and unpaid payroll expenses to the extent set forth in the Budget as of the date of such Event of Default.  The DIP Agent and the DIP Lenders shall have no obligation to lend or advance any additional funds to or on behalf of the Debtors, or provide any other financial accommodations to the Debtors, following five (5) business days of transmission of an Enforcement Notice (defined below) to the Debtors and Committee, if any, notifying of the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

8.3     <u>Expiration of Commitment</u>.  Upon the earlier of (i) expiration of the Debtors' authority to borrow and obtain other credit accommodations from the DIP Agent and the DIP Lenders pursuant to the terms of this Interim Order and the DIP Loan Documents (except if such authority

shall be extended with the prior written consent of the DIP Agent and the applicable (as provided in the DIP Loan Documents) DIP Lenders in their sole and absolute discretion, which consent shall not be implied or construed from any action, inaction, or acquiescence by the DIP Agent or any DIP Lender) and (ii) the occurrence and continuance of an Event of Default which results in the delivery by the DIP Agent of an Enforcement Notice (as defined below), all of the DIP Obligations shall automatically become due and payable and the DIP Agent and the DIP Lenders shall be automatically and completely relieved from the effect of any stay under section 362 of the Bankruptcy Code, any other restriction on the enforcement of their liens upon and security interests in the DIP Collateral or any other rights granted to the DIP Agent and the DIP Lenders pursuant to the terms and conditions of the DIP Loan Documents or this Interim Order, and the DIP Agent, acting on behalf of itself and the other DIP Lenders, shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Interim Order, the DIP Loan Documents, or applicable law which the DIP Agent may deem appropriate and to proceed against and realize upon the DIP Collateral or any other property of the Debtors' Estates, in each case following five (5) business days after delivery of an Enforcement Notice by the DIP Agent, unless an order of the Court is entered to the contrary.

8.4     Relief from Automatic Stay.  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application, or order of the Court to the extent necessary to permit the DIP Agent, acting on behalf of itself and the DIP Lenders, to perform any act authorized or permitted under or by virtue of this Interim Order or the DIP Loan Documents, including, without limitation, (a) to implement the postpetition financing arrangements authorized by this Interim Order and pursuant to the terms of the DIP Loan Documents, and (b) to take any act to create, validate, evidence, attach, or perfect any lien, security interest, right, or claim in the DIP Collateral.  In addition, and without limiting the foregoing, upon the occurrence and continuance of an Event of Default and after providing five (5) business days prior written notice to counsel for the Debtors, counsel for the Committee, if any, counsel for the Prepetition Secured Creditors, and the U.S. Trustee (the "**Enforcement Notice**"), the DIP Agent, acting on behalf of itself and the DIP

Lenders, shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, the DIP Loan Documents, or applicable law as the DIP Agent may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the DIP Collateral or any other assets or properties of the Debtors' Estates upon which the DIP Agent, for the benefit of itself and the DIP Lenders, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all DIP Obligations.  The DIP Agent shall not object to the Debtor, the Committee, or Prepetition Secured Creditors seeking a hearing before this Court on shortened notice during the five (5) business day period after an Enforcement Notice is delivered. For the avoidance of doubt, during the five (5) business day period referenced above, the DIP Agent and DIP Lenders shall have no obligation to make any additional advances under the DIP Loan Documents, except to fund the Carve-Out and postpetition accrued and unpaid payroll expenses to the extent set forth in the Budget as of the date of the Event of Default, and shall further be permitted to exercise control over the Debtors' cash and bank accounts (including the right to sweep and apply cash) in accordance with the DIP Loan Documents, subject to the foregoing exception.

Section 9.     <u>Good Faith</u>.  The terms of this Interim Order were negotiated in good faith and at arm's length by and among the Debtors, the DIP Agent, and the DIP Lenders.  The DIP Agent and the DIP Lenders shall be entitled to the full protections of section 364(e) of the Bankruptcy Code. The liens, claims, and other covenants and payments as set forth in the DIP Term Sheet, the DIP Loan Documents, and this Interim Order, as well as the protections afforded parties acting in "good faith" under section 364(e) of the Bankruptcy Code are integral, critical, and essential components of the DIP Facility provided by the DIP Lender to the Debtors.

Section 10.     <u>Representations; Covenants; and Waivers.</u>

10.1     <u>Debtor's Waivers</u>.  It shall be an immediate event of default under the DIP Facility if, at any time during the Chapter 11 Case, any Debtor seeks authority to use Cash Collateral of the DIP Agent and the DIP Lenders under section 363 of the Bankruptcy Code without the written consent of the DIP Agent in its sole and absolute discretion and no such consent shall be implied from any action, inaction, or acquiescence by the DIP Agent or any DIP Lender.  At all times during the Chapter 11 Case, and whether or not an Event of Default has occurred, the Debtors irrevocably waive

any right that they may have to (a) obtain postpetition loans or other financial accommodations pursuant to section 364 of the Bankruptcy Code, other than from the DIP Agent and the DIP Lenders or as may be otherwise expressly permitted pursuant to the DIP Loan Documents, (b) challenge the application of any payments authorized by this Interim Order, (c) propose, support or file a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all DIP Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the DIP Term Sheet, or (d) seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would directly restrict or impair the rights and remedies of the DIP Agent or the DIP Lenders under this Interim Order and the DIP Loan Documents or the DIP Agent's and the DIP Lenders' exercise of such rights or remedies; provided, however, that the DIP Agent, in its sole and absolute discretion, may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent or any DIP Lender.

10.2    Section 506(c) Claims.  Subject to the entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration which have or may be incurred in the Chapter 11 Case at any time shall be charged against the DIP Agent, the DIP Lenders, their respective claims or interests, or the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the DIP Agent in its sole and absolute discretion, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent or any DIP Lender.

10.3    Collateral Rights.  Until all of the DIP Obligations shall have been indefeasibly paid and satisfied in full:

10.3.1  no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any DIP Collateral prior to an Event of Default without consent of the DIP Agent or Order of the Court; and

10.3.2  upon and after the occurrence of an Event of Default, and subject to the DIP Agent providing five (5) business days prior written notice as set forth in Section 8.4, above, the DIP Agent (or any of its employees, agents, consultants, contractors, or professionals), on behalf of

itself and the DIP Lenders, shall have the right, at the sole cost and expense of the Debtors, to: (a) subject to the terms of the Debtors' agreements with third parties or applicable non-bankruptcy law, enter upon, occupy, and use any real or personal property, fixtures, equipment, leasehold interests, or warehouse arrangements owned or leased by Debtors, and (b) use any and all trademarks, tradenames, copyrights, licenses, patents, or any other similar assets of the Debtors.

Section 11.     Other Rights and Obligations.

11.1     No Modification or Stay of This Interim Order.  Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation, or reversal of this Interim Order, any of the DIP Loan Documents, or any term hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of the Chapter 11 Case (each, a "**Subject Event**"), (i) the acts taken by the DIP Agent and the DIP Lenders in accordance with this Interim Order, and (ii) the DIP Obligations incurred or arising prior to the DIP Agent's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Order, and the acts taken by the DIP Agent and the DIP Lenders in accordance with this Interim Order, and the liens granted to the DIP Agent and the DIP Lenders in the DIP Collateral, and all other rights, remedies, privileges, and benefits in favor of the DIP Agent and the DIP Lenders pursuant to this Interim Order and the DIP Loan Documents shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code to the maximum extent applicable.

11.2     Power to Waive Rights; Duties to Third Parties.  The DIP Agent and the DIP Lenders, in their sole and absolute discretion, shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this Interim Order in respect of the DIP Agent and the DIP Lenders (the "**DIP Lender Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s). Any waiver by the DIP Agent or any DIP Lender of any DIP Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Agent or any DIP Lender to any

liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert a defense to any obligation owed by the Debtors to the DIP Agent or any DIP Lender.

11.3    Setoff and Return of Goods.  The Debtors shall not, without the consent of the DIP Agent in its sole and absolute discretion, (a) enter into any agreement to return any goods to any of their creditors for application against any prepetition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise.

11.4    Reservation of Rights.  The terms, conditions, and provisions of this Interim Order are in addition to and without prejudice to the rights of the DIP Lenders and the DIP Agent, on behalf of itself and the DIP Lenders, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, or any other applicable agreement or law, including, without limitation, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Debtors' Estates.

11.5    Binding Effect of Interim Order.

11.5.1  Immediately upon entry by this Court, this Interim Order shall be valid and binding upon and inure to the benefit of the DIP Agent, the DIP Lenders the Prepetition Secured Creditors, the Debtors and the property of the Debtors' Estates, all other creditors of the Debtors, any Committee, and all other parties in interest and their respective successors and assigns (including any chapter 11 or chapter 7 trustee or any other fiduciary hereafter appointed as a legal representative of the Debtors), in the Chapter 11 Case, any Successor Case, or upon dismissal of the Chapter 11 Case or any Successor Case.

11.5.2  Any order dismissing the Chapter 11 Case or a Successor Case under section 1112 or otherwise shall be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the DIP Superpriority Claim and the DIP Liens shall continue in full

-29-

force and effect notwithstanding such dismissal until the DIP Obligations are indefeasibly paid and satisfied in full in cash, and (b) this Court shall retain jurisdiction to the greatest extent permitted by applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claim and the DIP Liens.  In the event any Court modifies any of the provisions of this Interim Order or the DIP Loan Documents following a Final Hearing, (i) such modifications shall not affect the rights or priorities of the DIP Agent and the DIP Lenders pursuant to this Interim Order, including with respect to the DIP Collateral, or any portion of the DIP Obligations which arises or is incurred or is advanced prior to such modifications, and (ii) this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

   11.6 <u>Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment</u>. All postpetition advances and other financial accommodations under the DIP Term Sheet and the other DIP Loan Documents are made in reliance on this Interim Order and there shall not at any time be entered in the Chapter 11 Case, or in any Successor Case, any order (other than the Final Order) which (a) authorizes the use of Cash Collateral or the proceeds of the DIP Facility except as expressly permitted hereunder or in the DIP Loan Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the DIP Agent, for its benefit and the benefit of the DIP Lenders, holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Agent, for its benefit and the benefit of the DIP Lenders, herein unless, in each instance (i) the DIP Agent shall have given its express prior written consent with respect thereto (such consent to be in the DIP Agent's absolute and sole discretion and no such consent being implied from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender), or (ii) such other order requires that all DIP Obligations shall first be indefeasibly paid and satisfied in full in cash in accordance with the terms of the DIP Term Sheet and the other DIP Loan Documents, including, without limitation, all debts and obligations of the Debtors to the DIP Agent and the DIP Lenders which arise or result from the obligations, loans, security interests, and liens authorized herein, on terms and conditions acceptable to the DIP Agent.  The security interests and liens granted to or for the benefit of the DIP

Agent and the DIP Lenders hereunder and the rights of the DIP Agent and the DIP Lenders pursuant to this Interim Order shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtors without the express prior written consent of the DIP Agent and the DIP Lenders (such consent to be in the DIP Agent's and DIP Lenders' absolute and sole discretion).

11.7    No Owner/Operator Liability.  In determining to make any loan under the DIP Term Sheet or any Order related to the DIP Term Sheet or the obligations created thereunder, or in exercising any rights or remedies as and when permitted pursuant to the DIP Term Sheet or any Order related to the DIP Term Sheet or the obligations created thereunder, none of the DIP Agent or the DIP Lenders shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

11.8    Marshalling/552(b).  Subject to entry of the Final Order, none of the DIP Agent or the DIP Lenders, shall be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral.  Subject to entry of the Final Order, the DIP Agent and the DIP Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent or the DIP Lenders with respect to proceeds, products, offspring, or profits of any of the DIP Collateral.

11.9    Term; Termination.  Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among the Debtors, the DIP Agent, and the DIP Lenders authorized by this Interim Order may be terminated pursuant to the terms of the DIP Term Sheet.

11.10    Objections Overruled.  All objections to the entry of this Interim Order are, to the extent not withdrawn or resolved, hereby overruled in their entirety.

Section 12.    Adequate Protection to Prepetition Secured Creditors.    This Court finds, that the adequate protection provided in this Interim Order (the "**Adequate Protection**"), including, without limitation, in this Paragraph 12, is reasonable and calculated to protect the interests of the Prepetition Secured Creditors.

       12.1    Prepetition Secured Party Adequate Protection Liens and Additional Liens to Secure the Prepetition Secured Obligations.    As adequate protection for the Master Trustee for the Prepetition Secured Liens, the Master Trustee, in accordance with sections 361 and 363(e) of the Bankruptcy Code, is hereby granted, for the benefit of the Master Trustee, additional and replacement valid, binding, enforceable, non-avoidable, and perfected postpetition security interests and liens (the "**Adequate Protection Liens**") upon all Prepetition Collateral (collectively, the "**Adequate Protection Collateral**"), in each case solely to secure the aggregate diminution in value (as determined pursuant to the Bankruptcy Code), if any, in the value of the Prepetition Collateral; *provided that* the Adequate Protection Liens shall be subject to the Debtors' or any other party's right to assert any and all challenges, causes of action, and claims against the Prepetition Secured Creditors The Adequate Protection Liens are subject and subordinate to (A) the Carve-Out, (B) the DIP Liens, and (C) the Permitted Priority Liens.

       12.2    507(b) Claims.    Notwithstanding the provision of Adequate Protection hereunder, the Master Trustee is hereby granted, solely to the extent of the diminution in value (as determined pursuant to the Bankruptcy Code), if any, in the value of the Prepetition Collateral, an allowed administrative expense claim pursuant to section 507(b) of the Bankruptcy Code (each, a "**Adequate Protection Superpriority Claim**") with super-priority over all other administrative expenses and all other claims against the Debtors or their Estates of any kind or nature whatsoever, but in all cases subject and subordinate to the Carve-Out, the DIP Superpriority Claim, and the Permitted Priority Liens.    Subject to the foregoing, the Adequate Protection Superpriority Claim shall be payable from and have recourse to all Prepetition Collateral, except the proceeds or property recovered pending the entry of the Final Order.

Section 13.    Findings and Conclusions.    This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable,

as of the Petition Date, immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

Section 14.    <u>Interim Order Governs.</u>  In the event that any provision of this Interim Order conflicts with any term of the DIP Loan Documents, this Interim Order shall govern.

Section 15.    <u>Retention of Jurisdiction.</u>  The Court has and will retain jurisdiction to interpret and enforce the provisions of this Interim Order.

Section 16.    <u>Final Hearing and Response Dates.</u>  The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for January ___, 2026, at _____ (prevailing Pacific time) before this Court (the "**Final Hearing**").  The Debtors shall promptly mail copies of this Interim Order to the Notice Parties, and to any other party that has filed a request for notices with this Court and to the Committee counsel.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) proposed counsel for the Debtors, Fox Rothschild LLP, 10250 Constellation Boulevard, 9th Floor, Los Angeles, CA 90067, Attn: Keith Owens & Nicholas Koffroth; (b) counsel for the DIP Agent, KTBS Law LLP, 1801 Century Park East, 26th Floor, Los Angeles, CA 90067, Attn: Sasha Gurvitz & Nir Maoz, Fax: 310-407-9090; and (c) U.S. Trustee, 501 I Street, Room 7-500, Sacramento, CA 95814, Attn: Edmund Gee; and shall be filed with the Clerk of the United States Bankruptcy Court for the Eastern District of California, in each case, to allow actual receipt of the foregoing no later than _____, prevailing Pacific time.

DATED:

_____
United States Bankruptcy Judge

## <u>ANNEX 1</u>

**Initial DIP Budget**

(attached)

**Oroville Hospital, et. al.**
**13-Week Budget**

($ '000s)

| Week / Week ending | 1 12-Dec | 2 19-Dec | 3 26-Dec | 4 2-Jan | 5 9-Jan | 6 16-Jan | 7 23-Jan | 8 30-Jan | 9 6-Feb | 10 13-Feb | 11 20-Feb | 12 27-Feb | 13 6-Mar | 13-Weeks Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Receipts** | $ 6,772.8 | $ 6,856.8 | $ 6,681.2 | $ 5,724.5 | $ 6,669.9 | $ 7,385.0 | $ 6,985.0 | $ 8,154.7 | $ 6,117.2 | $ 6,117.2 | $ 6,517.2 | $ 6,117.2 | $ 6,079.7 | $ 86,178.5 |
| | | | | | | | | | | | | | | |
| **Payroll & Benefits** | | | | | | | | | | | | | | |
| Physician Payments | $ - | $ (6,704.0) | $ - | $ - | $ - | $ (6,600.0) | $ - | $ - | $ - | $ - | $ (6,600.0) | $ - | $ - | $ (19,904.0) |
| Payroll | (1,889.3) | (4,050.6) | (1,889.3) | (4,015.9) | (1,889.3) | (4,050.6) | (1,889.3) | (4,050.6) | (1,854.6) | (4,050.6) | (1,889.3) | (4,050.6) | (1,854.6) | (37,424.8) |
| Employee Benefits | (1,698.8) | (943.5) | (253.0) | (1,278.7) | (253.0) | (443.5) | (253.0) | (443.5) | (1,088.3) | (443.5) | (253.0) | (443.5) | (1,088.3) | (8,883.3) |
| **Total Payroll & Benefits** | $ (3,588.1) | $ (11,698.1) | $ (2,142.3) | $ (5,294.7) | $ (2,142.3) | $ (11,094.1) | $ (2,142.3) | $ (4,494.1) | $ (2,942.9) | $ (4,494.1) | $ (8,742.3) | $ (4,494.1) | $ (2,942.9) | $ (66,212.1) |
| | | | | | | | | | | | | | | |
| **Disbursements** | | | | | | | | | | | | | | |
| Suppliers | $ (750.0) | $ (1,978.8) | $ (2,882.5) | $ (2,511.4) | $ (2,385.3) | $ (2,559.4) | $ (1,949.7) | $ (2,218.7) | $ (1,951.0) | $ (2,114.1) | $ (1,951.1) | $ (2,224.1) | $ (1,883.8) | $ (27,359.8) |
| Affiliates | - | - | - | (581.3) | - | - | - | - | (580.5) | - | - | - | (609.7) | (1,771.4) |
| Insurance | (234.8) | - | - | (399.9) | - | - | - | - | (593.5) | - | - | - | (433.3) | (1,661.5) |
| Tower | - | (80.0) | (291.9) | - | - | - | - | (481.9) | - | - | - | (481.9) | - | (1,335.8) |
| **Total Disbursements** | $ (984.8) | $ (2,058.8) | $ (3,174.5) | $ (3,492.6) | $ (2,385.3) | $ (2,559.4) | $ (1,949.7) | $ (2,700.6) | $ (3,125.0) | $ (2,114.1) | $ (1,951.1) | $ (2,706.0) | $ (2,926.8) | $ (32,128.6) |
| | | | | | | | | | | | | | | |
| **Cash Flow from Operations** | $ 2,199.9 | $ (6,900.0) | $ 1,364.5 | $ (3,062.7) | $ 2,142.3 | $ (6,268.5) | $ 2,893.0 | $ 960.1 | $ 49.3 | $ (490.9) | $ (4,176.2) | $ (1,082.9) | $ 210.1 | $ (12,162.2) |
| | | | | | | | | | | | | | | |
| **Non Operating Disbursements** | | | | | | | | | | | | | | |
| Professional Fees | $ (1,188.7) | $ (567.0) | $ (617.0) | $ (642.0) | $ (692.0) | $ (517.0) | $ (517.0) | $ (567.0) | $ (667.0) | $ (567.0) | $ (517.0) | $ (567.0) | $ (667.0) | $ (8,292.9) |
| UST / PCO Fees | (6.7) | (6.7) | (6.7) | (6.7) | (6.7) | (6.7) | (6.7) | (306.1) | (6.7) | (6.7) | (6.7) | (6.7) | (6.7) | (386.7) |
| Utility Deposits | - | (306.1) | - | - | - | - | - | - | - | - | - | - | - | (306.1) |
| **Total Non-Operating Disbursements** | $ (1,195.4) | $ (879.7) | $ (623.7) | $ (648.7) | $ (698.7) | $ (523.7) | $ (523.7) | $ (873.7) | $ (673.7) | $ (573.7) | $ (523.7) | $ (573.7) | $ (673.7) | $ (8,985.6) |
| | | | | | | | | | | | | | | |
| **Beginning Balance** | $ 6,469.6 | $ 22,714.1 | $ 14,934.3 | $ 15,675.1 | $ 11,963.7 | $ 13,407.3 | $ 6,615.2 | $ 8,984.5 | $ 9,070.8 | $ 8,446.5 | $ 7,381.8 | $ 9,182.0 | $ 7,525.4 | $ 6,469.6 |
| Change in Cash | 1,004.6 | (7,779.8) | 740.8 | (3,711.4) | 1,443.6 | (6,792.2) | 2,369.3 | 86.4 | (624.4) | (1,064.6) | (4,699.9) | (1,656.6) | (463.6) | (21,147.8) |
| (+) DIP Funding[1] | 16,000.0 | - | - | - | - | - | - | - | - | - | 6,500.0 | - | - | 22,500.0 |
| (-) DIP Fees & Interest | (760.0) | - | - | - | - | - | - | - | - | - | - | - | - | (760.0) |
| **Ending Available Cash** | $ 22,714.1 | $ 14,934.3 | $ 15,675.1 | $ 11,963.7 | $ 13,407.3 | $ 6,615.2 | $ 8,984.5 | $ 9,070.8 | $ 8,446.5 | $ 7,381.8 | $ 9,182.0 | $ 7,525.4 | $ 7,061.8 | $ 7,061.8 |

[1] Reflects $22.5M of DIP draws through the 13-week forecast period. The DIP facility allows for up to 2 additional draws in subsequent periods.

# **EXHIBIT A**

**DIP Term Sheet**

(attached)

Docusign Envelope ID: 0B672EA7-1691-47EF-844A-1784B5387779



**Binding Term Sheet**

**Debtor-In-Possession Credit Facility**

**Dated December 7, 2025**

**Oroville Hospital**

| | |
|---|---|
| **Purpose and Summary:** | Rosemawr Management LLC ("**Rosemawr**") has been approached by Cain Brothers, in its role as investment banker to Oroville Hospital ("**Hospital**") and Orohealth Corporation: A Nonprofit Healthcare System ("**OroHealth**") (each a "**Debtor**" and collectively, the "**Debtors**"), to negotiate a term sheet for providing a debtor in possession credit facility (the "**DIP Facility**") to the Debtors pursuant to sections 364(c) and 364(d) of the Bankruptcy Code in the chapter 11 cases (the "**Chapter 11 Cases**") to be filed by the Debtors in the United States Bankruptcy Court for the Eastern District of California (the "**Bankruptcy Court**"). The date of the filing of the Chapter 11 Cases is referred to as the "**Petition Date**." |
| **Borrowers:** | The Debtors |
| **DIP Agent:** | Rosemawr, in its capacities as administrative agent and collateral agent. |
| **DIP Lenders:** | Rosemawr and any other lenders party to the DIP Facility from time to time. |
| **Facility Amount:** | Up to $38mm (the "**Commitment**") |
| **Type of Financing:** | A delayed draw term loan facility will be made available in up to four draws over the term of the DIP Facility. An initial draw in the amount of $16mm shall be made available following entry of the interim order approving the DIP Facility which is not subject to a stay (in form and substance acceptable to the DIP Agent and including, among other things, a section 364(e) finding, the "**Interim Order**"). The remaining draws shall be funded following entry of a final order approving the DIP Facility which is not subject to a stay (in form and substance acceptable to the DIP Agent, the "**Final Order**") upon presentment of a borrowing notice acceptable to the DIP Agent and that no Event of Default has occurred and is continuing at such time. Borrowing under the DIP Facility shall permanently decrease the Commitment, and loans repaid under the DIP Facility may not be reborrowed. |
| | DIP Facility proceeds shall be funded into the Debtor's DIP Account, which account shall be subject to a control agreement in favor of the DIP Agent. |

Docusign Envelope ID: 0B672EA7-1691-47EF-844A-1784B5387779

| | |
|---|---|
| **Operative Documents:** | The "**Operative Documents**" shall include this Term Sheet, a Senior Secured Superpriority Debtor-In-Possession Financing Agreement (the "**DIP Credit Agreement**"), a control agreement in favor of the DIP Agent, the Interim Order, the Final Order, and any other documents executed and delivered pursuant thereto or otherwise evidencing, pertaining to or securing any loan or other obligation thereunder (the foregoing, collectively, the "**DIP Loan Documents**"), each of which shall be in form and substance acceptable to the DIP Agent.  Execution of the Operative Documents shall occur as soon as reasonably practicable following entry of the Interim Order, but in any event no later than two business days prior to the hearing to consider entry of the Final Order. |
| **Use of Proceeds:** | To (i) pay fees and expenses related to the DIP Facility and the Chapter 11 Cases, and (ii) fund operating expenses, support asset sale process, and cover administrative and necessary bankruptcy-related expenses, subject to the Approved Budget and any order of the Bankruptcy Court (defined below). |
| | No proceeds of the DIP Facility nor any DIP Collateral may be used (i) in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent or any DIP Lender or (ii) to apply to the Bankruptcy Court for or otherwise support a request for authority to approve superpriority claims or grant liens (other than the Carve-Out) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, or DIP Claims, unless permitted under the Operative Documents or unless all obligations under the DIP Facility and claims granted to the DIP Agent and the DIP Lenders under the Interim Order or the Final Order, as applicable, have been refinanced or paid in full in cash or otherwise agreed to in writing by the DIP Agent and DIP Lenders. |
| **Facility Interest Rate and Fees:** | The DIP Facility shall accrue interest at 11% per annum payable in cash monthly in arrears on the last day of each month; provided that at the Debtor's option and on least 5 business days' prior written notice to the DIP Agent, interest may be paid-in-kind by capitalizing such interest payment on the applicable interest payment date  and adding it to the principal balance of the outstanding term loans.  Notwithstanding the foregoing, the DIP Facility shall accrue interest at 12% per annum during the Sale Milestone Extension Period, if invoked by the Borrowers. |
| | An upfront fee, in the amount of 2% of the Commitment, will be fully earned, non-refundable and payable on the date of entry of the Interim Order. |
| | An exit fee, in the amount of 1% of the Commitment, will be fully earned and non-refundable on the date of entry of the Interim DIP order and payable on the Maturity Date. |
| | In an Event of Default, the interest rate on the DIP Facility shall increase by 2% (to 13% prior to a Sale Milestone Extension Period and up to 14% during a Sale Milestone Extension Period). |

179903896.3

Docusign Envelope ID: 0B672EA7-1691-47EF-844A-1784B5387779

**Cost and Expenses:**

Debtor shall pay, on a current basis, the DIP Agent's and DIP Lenders' legal costs and expenses, including reasonable attorneys' fees, associated with the Chapter 11 Cases and the negotiation and execution of the DIP Facility and Operative Documents, and the transactions contemplated thereby, whether incurred before or after execution of the Operative Documents or filing of the Chapter 11 Cases, including for any litigation pertaining to any dispute under or the enforcement of any rights and remedies under the Operative Documents and the Chapter 11 Cases.

The Operative Documents shall contain customary indemnification provisions for the benefit of the DIP Agent and the DIP Lenders, and its related parties, including, without limitation, indemnification against losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated by the Operative Documents or the use or the proposed use of proceeds thereof.

**DIP Maturity Date:**

The earliest of the: (i) the consummation of any sale or other disposition of all or substantially all of the assets of the Debtor pursuant to section 363 of the Bankruptcy Code; (ii) December 31, 2026 or if the Borrowers invoke, subject to the terms and conditions in the DIP Credit Agreement, the Sale Milestone Extension Period February 28, 2027; (iii) the date of the acceleration of the loans under the DIP Facility and the termination of the Commitment following the occurrence and during the continuation of an Event of Default in accordance with the Operative Documents; (iv) entry of an order without the express written consent of the DIP Agent and the DIP Lenders obtaining additional financing from a party other than the DIP Lenders under section 364(d) of the Bankruptcy Code except if such financing provides for the payment in full in cash of the obligations under the DIP Facility; (v) conversion of the Chapter 11 Cases to a Chapter 7 liquidation, or the dismissal of the Chapter 11 Cases or the appointment of a trustee or examiner with expanded power in the Chapter 11 Cases; or (vi) 45 days after the Petition Date (or such later date as agreed to by the DIP Agent), unless the Final Order has been entered by the Bankruptcy Court on or prior to such date (such earliest date, the "**DIP Maturity Date**"). The occurrence of the DIP Maturity Date shall terminate the ability of the Debtor to borrow under the DIP Facility, cause all outstanding loans, interest, expenses and other DIP Obligations thereunder to become due and payable in full in cash, and shall terminate any further obligation of the DIP Agent and the DIP Lenders to fund under the Operative Documents.

**Mandatory Prepayment:**

Customary and appropriate for transactions of this type, including 100% of net cash proceeds, in each case, of asset dispositions, incurrence of debt, extraordinary receipts (excluding the receipt of any Hospital Quality Assurance Fee ("**HQAF**") funds); provided however, that extraordinary receipts shall include HQAF receipts related to Program IX at 90% of such receipts).

**Collateral:**

Subject to the Carve-Out and the Permitted Priority Liens set forth on Schedule 1, all obligations of the Debtor under the Operative Documents, including, without limitation, all principal, accrued interest, costs, fees and premiums provided for therein, and all obligations under the DIP Facility

179903896.3

DocuSign Envelope ID: 0B672EA7-1691-47EF-844A-1784B5387779

(the "**DIP Obligations**") shall be entitled to (i) senior secured priming liens on, and security interests in, all assets of the Debtors , whether now owned or existing or hereafter acquired, created or arising and wherever located (the "**DIP Liens**") and (ii) superpriority claim status pursuant to section 364(c)(1) and section 364(d)(1) of the Bankruptcy Code, with priority over any and all secured liens, administrative expense claims, and unsecured claims, of any kind or nature whatsoever, now existing or hereafter arising under the Bankruptcy Code (the "**DIP Claims**"). The DIP Liens will automatically attach to the DIP Collateral and become valid and perfected immediately upon entry of the Interim Order, without the necessity of the execution or filing of mortgages, landlord agreements, security agreements, pledge agreements, control agreements, financing statements or other agreements. There shall be an assignment in favor of the DIP Agent, on behalf of the DIP Lenders, of accounts receivable, cash, and collateral and the proceeds thereof.

**Adequate Protection:**        The DIP Agent to permit adequate protection liens for those certain holders of secured bonds (the "**Bondholders**") under the indenture between the Debtor as issuer and UMB Bank, N.A., as trustee (the "**Bonds**"), which such liens shall be junior in priority to the DIP Liens and DIP Claims in all respects.

**Carve-Out:**        The liens and security interests in the DIP Collateral, and the superpriority administrative claims shall be subject in all respects to the Carve-Out, which shall be defined in the Interim Order and Final Order and shall be on terms acceptable to the DIP Agent.

**Milestones:**        The Operative Documents shall include milestones (the "**Milestones**"), including the following:

(i) entry of the Interim Order on or before 7 days after the Petition Date;

(ii) the Debtors shall have sought the retention of the following professionals not later than 30 days after the Petition Date: (a) Fox Rothschild LLP, as general bankruptcy counsel; (b) FTI Consulting, Inc., as financial advisor; (c) Cain Brothers, a division of KeyBanc Capital Markets, as investment banker; (d) Hooper Lundy & Bookman LLP, as special healthcare regulatory and transaction counsel; and (e) Greenberg Glusker LLP as conflicts counsel;

(iii) entry of the Final Order on or before 45 days after the Petition Date;

(iv) execution of a stalking horse purchase agreement for the sale or other disposition of all or substantially of the assets of the Debtor pursuant to section 363 of the Bankruptcy Code, in form and substance acceptable to the DIP Agent (the "**Sale**"), on or before 150 days after the Petition Date;

(v) entry of one or more orders of the Bankruptcy Court approving the Sale, on or before May 15, 2026;

(vi) the consummation of the Sale by December 31, 2026; provided, however, that such milestone may be extended upon 5 business days' prior written

Docusign Envelope ID: 0B672EA7-1691-47EF-844A-1784B5387779

notice to the DIP Lender, to February 28, 2027, subject to the Extension Interest Rate and provided that there is no existing and continuing Event of Default (the "**Sale Milestone Extension Period**").

**Events of Default:**

The DIP Credit Agreement shall contain events of default (collectively, "**Events of Default**") consistent with this Term Sheet and customary for debtor-in possession financing facilities of this type and acceptable to the DIP Agent and the DIP Lenders, including, without limitation:

(i) payment, non-compliance with covenants set forth in the DIP Credit Agreement, non-compliance with any Permitted Variance or failure to timely deliver a Variance Report, judgements in excess of $100,000, impairment of security interest in the DIP Collateral and other customary defaults;

(ii) failure to meet any Milestone;

(iii) the dismissal of the Chapter 11 Cases or the conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(iv) non-compliance, subject to any applicable grace and/or cure periods, by the Debtor with the terms of the Interim Order or the Final Order;

(v) the entry of an order staying, reversing, vacating or otherwise modifying the Interim Order or the Final Order, in each case without the prior written consent of the DIP Agent;

(vi) the entry of an order appointing a trustee, or an examiner having expanded powers (beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) under section 1104 of the Bankruptcy Code (other than a fee examiner) in the Chapter 11 Cases, or the Bankruptcy Court shall have entered an order providing for such appointment, in each case without the prior written consent of the DIP Agent in its sole discretion;

(vii) the entry of an order in any of the Chapter 11 Cases granting relief from any stay or proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure against any of the DIP Collateral to which the fair market value of which exceeds $100,000; provided, however, that foreclosure related to any leased equipment with a fair market value that exceeds $100,000 will not constitute an event of default if such foreclosure would not cause a material adverse effect with respect to the Debtors' operations;

(viii) the entry of an order (a) surcharging any of the DIP Collateral under sections 105, 506(c), or any other section of the Bankruptcy Code, (b) allowing any administrative expense claim having priority over or ranking in parity with the DIP Claims or the rights of the DIP Agent (subject to the Carve- Out), or (c) otherwise adversely impacting the DIP Agent's liens and priority in the DIP Collateral as set forth in this Term Sheet;

(ix) any action by any Debtor to (a) challenge the rights and remedies of the DIP Agent or any DIP Lender under the DIP Facility in the Chapter 11 Cases

Docusign Envelope ID: 0B672EA7-1691-47EF-844A-1784B5387779

or acting in a manner inconsistent with the DIP Facility, or (b) avoid or require disgorgement by the DIP Agent or any DIP Lender of any amounts received in respect of the obligations under the DIP Facility;

(x) entry of an order without the express written consent of the DIP Agent obtaining additional financing from a party other than the DIP Agent and the DIP Lenders under section 364(d) of the Bankruptcy Code except if such financing provides for the payment in full, in cash, of the DIP Obligations;

(xi) the making of any material payments in respect of prepetition obligations other than (a) as permitted by the Interim Order or the Final Order, (b) as permitted by any "first day" or "second day" orders reasonably satisfactory to the DIP Agent, (c) as permitted by any other order of the Bankruptcy Court reasonably satisfactory to the DIP Agent, (d) as permitted under the DIP Loan Documents in accordance with the Approved Budget (defined below), or (e) as otherwise agreed to by the DIP Agent;

(xii) entry of an order by the Bankruptcy Court terminating or modifying the exclusive right of any Debtor to file a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code, without the prior written consent of the DIP Agent;

(xiii) the Debtor shall seek to, or support any other person's motion to, (a) disallow in whole or in part the DIP Obligations, or (b) challenge the validity and enforceability of the DIP Liens;

(xiv) the Debtor files a Plan that is not in form and substance satisfactory to the DIP Agent,

(xv) the Debtor files a motion seeking to settle a controversy or claim on account of the DIP Collateral in an amount exceeding $100,000 without the prior written consent of the DIP Agent;

(xvi) the Debtor files a motion for the Bankruptcy Court to approve a sale of the DIP Collateral pursuant to section 363 of the Bankruptcy Code which proposed sale is not reasonably acceptable to the DIP Agent; or

(xvii) the Debtor shall fail to execute and deliver to the DIP Agent any agreement, financing statement, trademark filing, copyright filing, notices of lien or similar instruments or other documents that the DIP Agent may reasonably request from time to time to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens created in favor of the DIP Agent, subject to the time periods and terms set forth in this Term Sheet.

Upon the occurrence and during the continuation of an Event of Default under the Operative Documents, all remedies customarily available in the Chapter 11 Cases shall be available to the DIP Agent, on behalf of the DIP Lenders, including, without limitation, those remedies customarily available to a senior secured, administrative expense claim of a debtor-in-possession lender.

Docusign Envelope ID: 0B672EA7-1691-47EF-844A-1784B5387779

**Approved Variance & Budget Reporting:**

The Debtor will have delivered a 13-week cash flow forecast, prepared in form and substance satisfactory to, and as approved by, the DIP Agent and DIP Lenders in their discretion (the "**Approved Budget**"), setting forth cash receipts and the disbursements (including payment of trade payables and expenses, fees and expenses of the professionals, and working capital and other general corporate needs) of the Debtor for the period covered thereby, delivered by the Debtor to the DIP Agent and the DIP Lenders on or before entry of the Interim Order; provided that the Debtor shall deliver every 4 weeks thereafter an updated rolling 13-week cash flow forecast in substantially the same form as the initial Approved Budget and which such updated cash flow forecast shall constitute the "Approved Budget" once approved by the DIP Agent (provided, that, until the DIP Agent approves any such updated cash flow forecast, the most recent 13-week cash flow forecast approved by the DIP Agent shall continue to be the Approved Budget). The Debtor shall maintain a minimum cash balance of $5 million measured weekly.

The Debtor will deliver a weekly variance and compliance report by each Thursday at 5:00 p.m. Pacific time, beginning on the 2nd Thursday following the Petition Date, in a form and with supporting information in detail acceptable to the DIP Agent, showing the comparison of, and the variances between, actual performance to projections for each line item) of the Approved Budget and reconciling the sources, uses and disbursements of cash, for each trailing four-week measurement period (or, solely in the case of the line item for HQAF receipts, each trailing eight-weeks) (each a "**Measurement Period**") ending on the immediately preceding Sunday (each a "**Variance Report**") and simultaneously with the delivery of the Variance Report, a certificate from the Chief Executive Officer, Chief Financial Officer or other senior officer of the Debtor showing the calculation of compliance (or non-compliance) with the Permitted Variance for such Measurement Period (such non-compliance to constitute an Event of Default).

"**Permitted Variance**" means an unfavorable variance of not greater than:

(i) 10% between the actual disbursements for the applicable Measurement Period from the projected disbursements for such Measurement Period as set forth in the Approved Budget, except as provided below with respect to professional fees and expenses;

(ii) 15% between the actual receipts for the applicable Measurement Period from the projected receipts for such Measurement Period, in each case excluding HQAF receipts, as set forth in the Approved Budget; and

(iii) 7.5% between the actual HQAF receipts related to Program VIII for the applicable Measurement Period from the projected HQAF receipts related to Program VIII for such Measurement Period, as set for in the Approved Budget.

(iv) No unfavorable variance shall be permitted for any professional fees and restructuring expenses (including United States Trustee fees) related to the Chapter 11 Cases on a cumulative basis in any calendar quarter beginning

Docusign Envelope ID: 0B672EA7-1691-47EF-844A-1784B5387779

with the quarter ended March 31, 2026, but excluding any professional fees and expenses of the DIP Agent.

If the actual variances for such period are less than or equal to the applicable Permitted Variance, the amount by which the actual variances is less than the applicable Permitted Variance shall be carried forward to the next Measurement Period and added to the applicable Permitted Variance for such next Measurement Period; provided that such carryforward, if unused, shall not be permitted to be carried forward to the next two succeeding Measurement Periods. The foregoing sentence concerning carryfoward does not apply to paragraph (iv) concerning professional fees and expenses.

|  |  |
|---|---|
| **Covenants:** | Usual and customary for transactions of this type taking into account the filing of the Chapter 11 Cases. |
| **Representations & Warranties:** | Usual and customary for transactions of this type taking into account the filing of the Chapter 11 Cases. |
| **Conditions Precedent:** | The following shall be conditions precedent to the funding of the initial delayed-draw term loan (and any subsequent delayed draw term loan, as applicable), under the DIP Facility: |

(i) Debtor shall have provided the DIP Agent with a copy of the "first day" motions, including the cash management motion and DIP motion, and proposed orders to be filed with the Bankruptcy Court (including the Interim Order), and all such motions and proposed orders shall be in form and substance acceptable to DIP Agent and DIP Lenders;

(ii) Entry of the Interim Order within seven days after the Petition Date, which order shall not be stayed or subject to appeal;

(iii) Delivery of an initial budget acceptable to the DIP Agent and the DIP Lenders;

(iv) All out-of-pocket costs, fees, and expenses required to be paid to the DIP Agent and the DIP Lenders pursuant to this Term Sheet, the Operative Documents, or the Interim Order shall have been paid (provided that the DIP Agent's and the DIP Lenders' legal fees and expenses shall be paid first from the $75,000 work fee provided to the DIP Agent and the DIP Lenders by the Debtor prior to the Petition Date and second from the proceeds of the DIP Facility, without double counting);

(v) The representations and warranties of the Debtor under the Operative Documents shall be true and correct in all material respects;

(vi) Other than the Chapter 11 Cases, there shall not have occurred or there shall not exist any event, condition, circumstance or contingency that, individually, or in the aggregate, (a) has had or could reasonably be expected to have a material adverse effect on the business, operations, properties, assets, performance or financial condition of the Debtor taken as a whole, (b) has resulted in, or could reasonably be expected to result in, a material

adverse effect on the validity or enforceability of, or the rights, remedies or benefits available to the DIP Agent or any DIP Lender, or (c) has had or could reasonably be expected to have, a material adverse effect on the ability of the Debtor to perform their obligations under any Operative Document;

(vii) The Debtor shall be in compliance in all respects with the Interim Order;

(viii) No Event of Default shall have occurred and be continuing under this Term Sheet;

(ix) No order has been entered reversing, amending, staying, vacating, terminating, or otherwise modifying in any manner adverse to the DIP Agent or any DIP Lender the Interim Order; and

(xii) The Debtor shall have delivered to the DIP Agent a customary borrowing notice in form and substance satisfactory to the DIP Agent.

**Release:** The Interim Order and Final Order shall include a customary release of the DIP Agent, the DIP Lenders, their affiliates, directors, officers, employees, agents, representatives, and professional advisors, with respect to any and all claims and causes of action arising from or related to the DIP Facility.

**Waivers:** The Final Order shall include terms and conditions customary for final DIP financing orders and shall be reasonably acceptable to the DIP Agent and the DIP Lenders, including, without limitation, waiver of the automatic stay, credit-bidding rights, "no marshaling" provisions and other similar doctrines, and waivers of the imposition of costs or right to surcharge the DIP Collateral pursuant to sections 105(a) and 506(c) of the Bankruptcy Code or otherwise, in each case, to the extent applicable.

[*The remainder of this page is intentionally blank.*]

| Confidentiality: | Prior to the filing of the Chapter 11 Cases, the provisions of this Term Sheet shall be kept confidential and shall not, without Rosemawr's prior consent, be disclosed to any person or entity other than the Debtor's directors, senior administrators, and professional advisors who have a need to know. All such persons or entities provided this Term Sheet shall be informed of this confidentiality requirement. |
|---|---|
| Governing Law: | New York (and to the extent applicable, the Bankruptcy Code). |

**ROSEMAWR MANAGEMENT LLC**

Signed:

_____

Julie Morrone
Principal


**Oroville Hospital**

Signed:

_____
Robert J. Wentz
Chief Executive Officer

**Orohealth Corporation: A Nonprofit Healthcare System**

Signed:

_____
Robert J. Wentz
Chief Executive Officer

179903896.3

Docusign Envelope ID: 0B672EA7-1691-47EF-844A-1784B5387779

**Schedule 1**
Permitted Priority Liens

a) Any lien of a lender listed below solely with respect to the mortgaged real property listed across such lender to the extent such lien is, as of the Petition Date, valid, enforceable, properly perfected and non-avoidable.

| Lendor | APN # | Address |
|---|---|---|
| First Citizens | 013-190-028-000 | 2784 Fay Way |
| First Citizens | 013-190-027-000 | 2786 Fay Way |
| First Citizens | 013-190-055-000 | 2788 Fay Way |
| First Citizens | 013-190-007-000 | 2635 Olive Highway |
| First Citizens | 013-190-005-000 | 2655 Olive Highway |
| First Citizens | 013-270-041-000 | 2734 Gilmore Lane |
| First Citizens | 013-190-058-000 | 2711 Oro Dam Blvd |
| First Citizens | 013-190-019-000 | 2713 Oro Dam Blvd |
| First Citizens | 035-430-140-000 | 2220 5th Avenue |
| First Citizens | 035-340-015-000 | 2828 Feather River Blvd. |
| First Citizens | 013-190-004-000 | 2665 Olive Highway |
| First Citizens | 013-190-002-000 | 2685 Olive Highway |
| First Citizens | 013-190-003-000 | 2675 Olive Highway |
| First Citizens | 013-190-006-000 | 2645 Olive Highway |
| First Citizens | 013-260-062-000 | 2721 Olive Highway |
| Trisha L. Hopps | 052-222-005-000 | 5543 Black Olive Drive |
| Trisha L. Hopps | 052-222-006-000 | 5537 Black Olive Drive |
| Mechanics Bank | 033-390-054-000 | 3579 Oro Dam Blvd. |
| Mechanics Bank | 013-300-119-000 | 2971 & 2981 Olive Highway |

**EXHIBIT B**




Oroville Hospital
Address Service List

| Name | Address |
|------|---------|
| ALE USA, INC. | ATTN CARMEN AZEVEDO 2000 CORPORATE CENTER DR   THOUSAND OAKS CA 91320 |
| ALE USA, INC. | ATTN CARMEN AZEVEDO P.O. BOX 660367   DALLAS TX 75266-0367 |
| ALLIANCE FUNDING GROUP | 17542 17TH STREET  200   TUSTIN CA 92780 |
| AMERICORP FINANCING | 877 S. ADAMS RD   BIRMINGHAM MI 48009 |
| AMERICORP FINANCING | PO BOX 633553   CINCINNATI OH 45263-3553 |
| AMUR FINANCIING | 304 W 3RD ST   GRAND ISLAND NE 68801 |
| AMUR FINANCING | PO BOX 2555   GRAND ISLAND NE 68801 |
| BETA HEALTHCARE GROUP | ATTN RAY BASTIN 1443 DANVILLE BOULEVARD   ALAMO CA 94507 |
| BETA HEALTHCARE GROUP | ATTN RAY BASTIN PO BOX 500030   SAN DIEGO CA 92150-0030 |
| BOSTON SCIENTIFIC CORPORATION | ATTN KETNOUVONG, BOUNTIAP 201 WASHINGTON ST   BOSTON MA 02108 |
| BOSTON SCIENTIFIC CORPORATION | ATTN KETNOUVONG, BOUNTIAP PO BOX 951653   DALLAS TX 75395-1653 |
| CALIFORNIA ATTORNEY GENERALS OFFICE | CONSUMER PROTECTION SECTION ATTN: BANKRUPTCY NOTICES 455 GOLDEN GATE AVE., STE. 11000  SAN FRANCISCO CA 94102-7004 |
| CALIFORNIA DEPARTMENT | OF HEALTH CARE SERVICES 1501 CAPITOL AVE STE 71.2048 SACRAMENTO CA 95814-5005 |
| CALIFORNIA HEALTHCARE INS, INC | ATTN PRESIDENT AND COO 9229 SIERRA COLLEGE BLVD   ROSEVILLE CA 95661-5919 |
| CANNON DESIGN | ATTN SAMUEL J. MUIR, ESQ. 222 BROADWAY, SUITE 1503   OAKLAND CA 94507 |
| CANNON DESIGN | ATTN CEO DEPT CHICAGO 19824   PALATINE IL 60055 |
| CANNON DESIGN | ATTN CEO 300 E 42ND ST 2ND FL   NEW YORK NY 10017 |
| CANON MEDICAL FINANCE | 1000 HOWARD BLVD, SUITE 103   MT LAUREL NJ 08054 |
| CARDINAL HEALTH | ATTN TYRONZA WALTON 7000 CARDINAL PLACE   DUBLIN OH 43017 |
| CARDINAL HEALTH | ATTN TYRONZA WALTON P.O. BOX 742946   LOS ANGELES CA 90074-2946 |
| CHANGE HEALTHCARE | ATTN LUANNE ANDERSON P.O. BOX 742526   ATLANTA GA 30374-2526 |
| CHANGE HEALTHCARE | ATTN VASSI ILIADIS, DAVID WILLNER OREN KREPS 1999 AVE OF THE STARS, STE 1400  LOS ANGELES CA 90067 |
| CHANGE HEALTHCARE | ATTN LUANNE ANDERSON C/O OPTUM 11000 OPTUM CIRCLE  EDEN PRAIRIE MN 55344 |
| CHG MEDICAL STAFFING, INC. | ATTN EVONNE ORWIN P.O. BOX 972670   DALLAS TX 75397-2670 |
| CLINICOMP INTERNATIONAL, INC. | ATTN SEAN GALLAGHER 9655 TOWNE CENTRE DR   SAN DIEGO CA 92121 |
| CODONICS | 17991 ENGLEWOOD DR   MIDDLEBURG HEIGHTS OH 44130 |
| CODONICS | PO BOX 523   MURIETTA OH 45750-0523 |
| CURATIVE TALENT, LLC | ATTN BLAKE BEAR PO BOX 122549   DALLAS TX 75312-2549 |
| DE LAGE LANDEN FINANCIAL | SERVICES, INC. PO BOX 825736   PHILADELPHIA PA 19182-5736 |
| DELL FINANCIAL SERVICES | ONE DELL WAY   ROUND ROCK TX 78682 |
| DELL FINANCIAL SERVICES | PO BOX 5292   CAROL STREAM IL 60197-5292 |
| DEXT CAPITAL | PO BOX 74007351   CHICAGO IL 60674-7351 |
| FIRST CITIZENS BANK | 440 DRAKE CIRCLE   SACRAMENTO CA 95864 |
| FIRST CITIZENS BANK | PO BOX 63034   CHARLOTTE NC 28263-3034 |
| FORD CREDIT | PO BOX 650575   DALLAS TX 75265-0575 |
| FORD CREDIT | 1350 ORO DAM BLVD E   OROVILLE CA 95965 |
| GE HEALTHCARE | 2984 COLLECTION CENTER DRIVE   CHICAGO IL 60693 |
| GE HEALTHCARE CAPITAL | PO BOX 640200   PITTSBURGH PA 15264-0200 |

| Name | Address |
|------|---------|
| GREENBERGTRAURIG,LLP | COUNSEL TO UMB ATTN COLLEENMURPHY 1 INTERNATIONAL PL STE 2000 BOSTON MA 02110 |
| INTUITIVE SURGICAL | ATTN CEO/GENERAL COUNSEL PO BOX 883629   LOS ANGELES CA 90088-3629 |
| INTUITIVE SURGICAL | ATTN CEO/GENERAL COUNSEL 1020 KIFER ROAD   SUNNYVALE CA 94086 |
| INTUITIVE SURGICAL | PO BOX 883629   LOS ANGELES CA 90088-3629 |
| INTUITIVE SURGICAL INC | 1020 KIFER ROAD   SUNNYVALE CA 94086 |
| LANDMARK HEALTHCARE FACILITIES | ATTN MICHAEL D. CLEARY 839 N. JEFFERSON ST   MILWAUKEE WI 53202 |
| MECHANICS BANK | 2000 M STREET   MERCED CA 95340 |
| MECHANICS BANK | 2227 MYERS STREET   OROVILLE CA 95966 |
| MEDICAL SOLUTIONS | ATTN DARREL REICHENBERG P.O. BOX 850737   MINNEAPOLIS MN 55485-0737 |
| MEDLINE INDUSTRIES | ATTN SHANE REED, DIRECTOR OF CREDIT A/R SERVICES AND ESCALATIONS FINANCE DEPT. LA 21558  PASADENA CA 91185-1558 |
| MEDLINE INDUSTRIES | ATTN SHANE REED, DIRECTOR OF CREDIT A/R SERVICES AND ESCALATIONS FINANCE THREE LAKES DR  NORTHFIELD TOWNSHIP IL 60093 |
| MODERN-SUNDT | ATTN SARA KORNBLATT C/O GIBBS GIDEN 12100 WILSHIRE BLVD STE 300 LOS ANGELES CA 90025 |
| NISSAN MOTORS | PO BOX 740849   CINCINNATI OH 45274-0849 |
| OFFICE OF THE U.S. TRUSTEE | 450 GOLDEN GATE AVENUE, 5TH FLOOR SUITE 05-0153   SAN FRANCISCO CA 94102 |
| OHPAC PARTNERS, LLC | ATTN  RICHARD PACHULSKI 10100 SANTA MONICA BLVD   LOS ANGELES CA 90067 |
| OMNICELL, INC. | ATTN DORTHEA CARMON P.O. BOX 204650   DALLAS TX 75320-4650 |
| OMNICELL, INC. | ATTN DORTHEA CARMON 4220 NORTH FREEWAY   FORT WORTH TX 76137 |
| OROVILLE MEDICAL COMPLEX, LLC | ATTN RICHARD PACHULSKI 10100 SANTA MONICA BLVD   LOS ANGELES CA 90067 |
| PACIFIC GAS & ELECTRIC | ATTN CEO/GENERAL COUNSEL 300 LAKESIDE DRIVE   OAKLAND CA 94612 |
| PACIFIC GAS & ELECTRIC | ATTN CEO/GENERAL COUNSEL P.O. BOX 997300   SACRAMENTO CA 95899-7300 |
| PACIFIC PARKS LANDSCAPING, INC | LAW OFFICES OF ABDULAZAZ GROSSPART & DUDMAN 6454 COLDWATER CANYON AVE.  NORTH HOLLYWOOD CA 91606 |
| PHOENIX SETTLEMENT ADMIN. | ATTN YAMI BURNS 1411 N. BATAVIA ST., SUITE 105   ORANGE CA 92867 |
| PHOENIX SETTLEMENT ADMIN. | ATTN YAMI BURNS P.O. BOX 7208   ORANGE CA 92863 |
| STERIS CORPORATION | ATTN ALEX SYLVAN P.O. BOX 644063  PITTSBURGH PA 15264-4063 |
| STERIS CORPORATION | ATTN ALEX SYLVAN 5960 HEISLEY ROAD   MENTOR OH 44060 |
| STRYKER SALES LLC | ATTN NOEL PEREIRA 21343 NETWORK PLACE   CHICAGO IL 60673-1213 |
| THE BANK OF NEW YORK MELLON | PO BOX 392013   PITTSBURGH PA 15251-9013 |
| THE BANK OF NEW YORK MELLON | 500 ROSS ST 12TH FL   PITTSBURGH PA 15262 |
| TRI COUNTIES BANK | 63 CONSTITUTION DRIVE   CHICO CA 95973 |
| TRISHA L. HOPPS AND PAMELA SERAFINE | 5537 BLACK OLIVE DRIVE   PAMELA SERAFINE PARADISE CA 95954 |
| TRISHA L. HOPPS AND PAMELA SERAFINE | PAMELA SERAFINE 5537 BLACK OLIVE DRIVE   PARADISE CA 95954 |
| U.S. DEPARTMENT OF JUSTICE | ATTN EDWARD C. CROOKE CIVIL DIVISION, FRAUD SECTION 175 N STREET NE  WASHINGTON DC 200004 |
| UMB BANK | PO BOX 414589   KANSAS CITY MO 64141-4589 |





Address Service List

| Name | Address |
|------|---------|
| US ATTORNEY, EASTERN DISTRICT OF CA | 501 I ST, STE 10-100 ATTN ERIC GRANT  SACRAMENTO CA 95814 |
| VITALANT | ATTN MISTY JOHNSON P.O. BOX 29650  PHOENIX AZ 85038-9650 |
| VITALANT | ATTN MISTY JOHNSON 9305 E. VIA DE VENTURA  SCOTTSDALE AZ 85258 |
| VITEL NET | ATTN MICHAEL KOLLAR 1640 BORO PLACE 4TH FLOOR, SUITE 505 MCLEAN VA 22102 |
| WEATHERBY LOCUMS, INC. | ATTN EVONNE ORWIN P.O. BOX 972633  DALLAS TX 75397-2633 |
| WEATHERBY LOCUMS, INC. | ATTN EVONNE ORWIN 7259 BINGHAM JCT. BLVD  MIDVALE UT 84047 |
| ZIMMER, INC. | ATTN DANIEL CARABALLO 14235 COLLECTIONS CENTER DR  CHICAGO IL 60693 |

# Total Count: 78



Oroville Hospital

Address Service List

| Name | Address |
|------|---------|
| AMERICORP FINANCIAL, LLC | 877 S. ADAMS RD    BIRMINGHAM MI 48009 |
| ASSIGNEE NEC FINANCIAL SERVICES | MERIDIAN LEASING CORP 250 PEHLE AVENUE, STE. 203    SADDLE BROOK NJ 07663 |
| C T CORPORATION SYSTEM | 330 N BRAND BLVD SUITE 700    GLENDALE CA 91203 |
| C T CORPORATION SYSTEM | 330 N BRAND BLVD SUITE 700 ATTN: SPRS    GLENDALE CA 91203 |
| CORPORATION SERVICE COMPANY | PO BOX 2576    SPRINGFIELD IL 62708 |
| DE LAGE LANDEN FINANCIAL | SERVICES, INC. 1111 OLD EAGLE SCHOOL RD    WAYNE PA 19087 |
| DELL FINANCIAL SERVICES L.L.C. | ONE DELL WAY    ROUND ROCK TX 78682 |
| FIRST-CITIZENS BANK & TRUST COMPANY | 10201 CENTURION PARKWAY NORTH SUITE 100    JACKSONVILLE FL 32256 |
| FIRST-CITIZENS BANK & TRUST COMPANY | PO BOX 29519    RALEIGH NC 27626 |
| GE HFS, LLC | 9900 INNOVATION DRIVE, RP-2100    WAUWATOSA WI 53226 |
| GENPROBE INSTRUMENTS | 10211 GENETIC CENTER DRIVE    SAN DIEGO CA 92121 |
| INTUITIVE SURGICAL, INC. | 1020 KIFER ROAD    SUNNYVALE CA 94086 |
| LEASING ASSOCIATES OF | BARRINGTON, INC. 220 N RIVER ST    EAST DUNDEE IL 60118 |
| MED ONE CAPITAL FUNDING, LLC | 10712 SOUTH 1300    EAST SANDY UT 84094 |
| MERIDIAN LEASING CORPORATION | NINE PARKWAY NORTH SUITE 450    DEERFIELD IL 60015 |
| REPUBLIC BANK OF CHICAGO | 2221 CAMDEN CT.    OAK BROOK IL 60523 |
| TOSHIBA AMERICA MEDICAL CREDIT | 10 WATERVIEW BLVD.    PARSIPPANY NJ 07054 |
| WHITMIRE DISTRIBUTION CORPORATION | 1351 DOUBLEDAY AVE    ONTARIO CA 91761 |
| ZIMMER US, INC. | 345 E. MAIN ST.    WARSAW IN 46580 |

# Total Count: 19

**EXHIBIT C**

OROVILLE HOSPITAL, *et al.,* Case No. 25-26876
Electronic Mail Master Service List

| Name | Attn | Email Address |
|---|---|---|
| ALLIANCE FUNDING GROUP | | tneff@afg.com |
| AMERICORP FINANCING | | creditdept@americorpusa.com; mark.johnson@americorpusa.com |
| AMUR FINANCIING | | livler@goamur.com |
| CALIFORNIA ATTORNEY GENERALS OFFICE | ATTN: BANKRUPTCY NOTICES | attorneygeneral.appointments@doj.ca.gov |
| CANON MEDICAL FINANCE | | pgillece@us.medical.canon |
| CODONICS | | gcaddell@codonics.com |
| DE LAGE LANDEN FINANCIAL SERVICES, INC. | | jksmith@leasedirect.com; smathur2@leasedirect.com; customersupport@leasedirect.com |
| DELL FINANCIAL SERVICES | | patrick_hanks@dell.com |
| DEXT CAPITAL | | brent.mcqueen@dextcapital.com |
| FIRST CITIZENS BANK | | greg.mellor@firstcitizens.com |
| FORD CREDIT | | cgoodhue@orovilleford.com |
| GE HEALTHCARE | | david.w.kelsey@gehealthcare.com |
| GREENBERGTRAURIG,LLP | ATTN COLLEEN MURPHY | colleen.murphy@gtlaw.com |
| INTUITIVE SURGICAL | | jennifer.klepper@intusurg.com |
| MECHANICS BANK | | angie_sargsyan@mechanicsbank.com; samone_shafer@mechanicsbank.com |
| NISSAN MOTORS | | dominic.vizor@nissan-usa.com |
| OFFICE OF THE U.S. TRUSTEE | | ustp.region17@usdoj.gov |
| THE BANK OF NEW YORK MELLON | | felicia.kadimajohnson@usbank.com |
| TRI COUNTIES BANK | | kenforbis@tcbk.com |
| TRISHA L. HOPPS AND PAMELA SERAFINE | PAMELA SERAFINE | hoppsie44@gmail.com |
| UMB BANK | | gavin.wilkinson@umb.com |
| US ATTORNEY, EASTERN DISTRICT OF CA | ATTN ERIC GRANT | usacae-webmaster@usdoj.gov |
| ALE USA, INC. | ATTN CARMEN AZEVEDO | enterprise orderdesk@al-enterprise.com |
| BETA HEALTHCARE GROUP | ATTN RAY BASTIN | ray.bastin@betahg.com |
| BOSTON SCIENTIFIC CORPORATION | ATTN KETNOUVONG, BOUNTIAP | bountiap.ketnouvong@bsci.com |
| CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES | ATTN CHRISTINE OGURO | contactus@dhcs.ca.gov |
| CALIFORNIA HEALTHCARE INS, INC | ATTN PRESIDENT AND COO | mhiggins@optimahealthcare.com |
| CANNON DESIGN | ATTN SAMUEL J. MUIR, ESQ. | sam@muir.law |
| CARDINAL HEALTH | ATTN TYRONZA WALTON | tyronza.walton@cardinalhealth.com |
| CHANGE HEALTHCARE | ATTN LUANNE ANDERSON | luanne.anderson@optum.com |
| CHANGE HEALTHCARE | ATTN VASSI ILIADIS, DAVID WILLNER, OREN KREPS | vassi.iliadis@hoganlovells.com; david.willner@hoganlovells.com; oren.kreps@hoganlovells.com |
| CHG MEDICAL STAFFING, INC. | ATTN EVONNE ORWIN | evonne.orwin@chghealthcare.com |

OROVILLE HOSPITAL, *et al.,* Case No. 25-26876
Electronic Mail Master Service List

| Name | Attn | Email Address |
|------|------|---------------|
| CLINICOMP INTERNATIONAL, INC. | ATTN SEAN GALLAGHER | sean.gallagher@clinicomp.com |
| CURATIVE TALENT, LLC | ATTN BLAKE BEAR | bbear@doximity.com |
| INTUITIVE SURGICAL | ATTN CEO/GENERAL COUNSEL | customerservice@intusurg.com |
| LANDMARK HEALTHCARE FACILITIES | ATTN MICHAEL D. CLEARY | info@landmarkleadership.com |
| MEDICAL SOLUTIONS | ATTN DARREL REICHENBERG | darrel.reichenberg@medicalsolutions.com |
| MEDLINE INDUSTRIES | ATTN MICHELLE CURTIN | mcurtin@medline.com |
| MODERN-SUNDT | ATTN Sara Kornblatt | skomblatt@gibbsgiden.com |
| OHPAC PARTNERS, LLC | ATTN RICHARD PACHULSKI | rpachulski@pszjlaw.com |
| OMNICELL, INC. | ATTN DORTHEA CARMON | accounts.receivable@omnicell.com |
| OROVILLE MEDICAL COMPLEX, LLC | ATTN RICHARD PACHULSKI | rpachulski@pszjlaw.com |
| PACIFIC GAS & ELECTRIC | ATTN CEO/GENERAL COUNSEL | customerservice@pge.com |
| PACIFIC PARKS LANDSCAPING, INC | LAW OFFICES OF ABDULAZAZ | ksg@agrlaw.com |
| PHOENIX SETTLEMENT ADMIN. | ATTN YAMI BURNS | notice@phoenixclassaction.com |
| PHOENIX SETTLEMENT ADMIN. | ATTN YAMI BURNS | yami@phoenixclassaction.com |
| STERIS CORPORATION | ATTN ALEX SYLVAN | alex_sylvan@steris.com |
| STRYKER SALES LLC | ATTN NOEL PEREIRA | noel.pereira@stryker.com |
| U.S. DEPARTMENT OF JUSTICE | ATTN EDWARD C. CROOKE | jennifer.gregory@doj.ca.gov |
| VITALANT | ATTN MISTY JOHNSON | ar@vitalant.org |
| VITEL NET | ATTN MICHAEL KOLLAR | info@vitelnet.com |
| WEATHERBY LOCUMS, INC. | ATTN EVONNE ORWIN | evonne.orwin@chghealthcare.com |
| ZIMMER, INC. | ATTN DANIEL CARABALLO | daniel.caraballo@zimmerbiomet.com |

OROVILLE HOSPITAL, *et al.,* Case No. 25-26876

Electronic Mail Additional Service List

| Name | Email Address |
| --- | --- |
| AMERICORP FINANCIAL, LLC | creditdept@americorpusa.com |
| ASSIGNEE NEC FINANCIAL SERVICES | info@neclease.com |
| CORPORATION SERVICE COMPANY | joanne.smith@cscglobal.com |
| DE LAGE LANDEN FINANCIAL SERVICES, INC. | jksmith@leasedirect.com; smathur2@leasedirect.com |
| DELL FINANCIAL SERVICES L.L.C. | patrick_hanks@dell.com |
| FIRST-CITIZENS BANK & TRUST COMPANY | support.services@firstcitizens.com |
| GENPROBE INSTRUMENTS | ir@gen-probe.com |
| INTUITIVE SURGICAL, INC. | investor.relations@intusurg.com |
| LEASING ASSOCIATES OF BARRINGTON, INC. | wmccoy@labarrington.com |
| MED ONE CAPITAL FUNDING, LLC | bjorgensen@medonecapital.com; info@medonegroup.com |
| MERIDIAN LEASING CORPORATION | sales@meridianleasing.com |
| REPUBLIC BANK OF CHICAGO | oespinosa@republicbank.com |
| TOSHIBA AMERICA MEDICAL CREDIT | tic-service@toshiba.com |
| ZIMMER US, INC. | service.us@zimmer-group.com |