**13**

KEITH C. OWENS (SBN 184841)
kowens@foxrothschild.com
NICHOLAS A. KOFFROTH (SBN 287854)
nkoffroth@foxrothschild.com
**FOX ROTHSCHILD LLP**
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:     (310) 598-4150
Facsimile:     (310) 556-9828

*Proposed Counsel to Oroville Hospital, et al.,
the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION**

| | |
|---|---|
| In re: | Lead Case No. 25-26876 |
| OROVILLE HOSPITAL, *et al.*,[1] | Jointly Administered With: Case No. 25-26877 |
| Debtors and Debtors in Possession. | **DCN CAE-1** |
| | Chapter 11 |
| ☒ Affects All Debtors | Hon. Christopher D. Jaime |
| ☐ Affects Oroville Hospital<br>☐ Affects OroHealth Corporation: A Nonprofit Healthcare System | **Hearing Information**<br>Hearing Date:    January 12, 2026<br>Hearing Time:    10:00 a.m.<br>Location:         Courtroom 32<br>                     501 I Street<br>                     Sacramento, California 95814 |
| Debtors and Debtors in Possession. | |

## DEBTORS' CHAPTER 11 STATUS REPORT

Oroville Hospital, a California nonprofit public benefit corporation ("Oroville Hospital"), and OroHealth Corporation: A Nonprofit Healthcare System ("OroHealth" and, together with Oroville Hospital, the "Debtors"), the debtors and debtors in possession in the above-captioned cases (the "Chapter 11 Cases") hereby file this Status Report in accordance with the Court's *Order re Chapter 11 Status Conference and Notice Thereof* [ECF No. 88].

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Oroville Hospital (4554) and OroHealth Corporation: A Nonprofit Healthcare System (4776). The mailing address for the Debtors is 2767 Olive Highway, Oroville, California, 95966.

180562593.1

# I.

# **INTRODUCTION**

On December 8, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which initiated the Chapter 11 Cases. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108.[2] No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. On December 23, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors comprised of seven members.

OroHealth, Oroville Hospital, and their affiliated nondebtor entities operate as a California nonprofit health care system in and around Butte County, California, with approximately 133 general acute care beds (including 10 intensive care and 10 perinatal beds), an active emergency room, 14 "flex" beds separately authorized by the California Department of Public Health on an annual basis, and 126 skilled nursing facility beds. The Debtors also provide 33 specialty services at their 31 clinics (including 10 rural health clinics) in Oroville, Yuba City, and Chico, and provide laboratory services through Valley Clinical Laboratory with 23 outpatient laboratory draw stations in Oroville, Yuba City, Chico, Grass Valley, Orland, and Redding. In its fiscal year ended 2024, the Debtors recorded 98,018 patient days (adjusted to account for outpatient visits), 26,416 emergency room visits, 2.2 million lab tests, 361,558 clinic visits, and 384 births at their facilities. Patient care continues to be the Debtors' principal focus postpetition and the Debtors are pleased to report that they have not observed a negative impact to patient care because of the Chapter 11 Cases.

Each of the Debtors are exempt from federal income taxation as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986. A more detailed description of the Debtors, including their current and historical business operations and the events precipitating the Chapter 11 Cases, are set forth in the *Declaration of Robert J. Wentz in Support of Chapter 11 Petitions and First Day Motions* [ECF No. 20] (the "First Day Declaration").

The Debtors enter chapter 11 with the singular purpose of running a sales process to ensure Oroville Hospital and its related healthcare facilities continue serving Oroville, Butte County and

---

[2] Unless otherwise indicated herein, all references to "Section" or "§" refer to a section of Title 11 of the United States Code (the "Bankruptcy Code").

surrounding areas in accordance with their mission, and to maximize value for all stakeholders in these Chapter 11 Cases. Under applicable California law, the California Attorney General is entitled to review any proposed transaction. The Debtors have already been communicating with the Office of the California Attorney General and are hopeful for a collaborative process. However, as discussed at the "first day" hearing, the review process may materially impact the closing of any sale.

The Debtors sought and obtained interim approval [ECF No. 112] (the "Interim DIP Order") to enter into a postpetition financing arrangement with UMB Bank, N.A., as successor Series 2019 Bond Trustee, or, as applicable Master Trustee ("UMB Bank" or "DIP Lender"), pursuant to that certain term sheet approved in the Interim DIP Order (the "DIP Term Sheet"). Consistent with the milestones in the Interim DIP Order and DIP Term Sheet, the Debtors intend to file a motion for entry of an order approving bidding procedures, approving bid protections, scheduling certain dates related thereto, approving the form of notice and scheduling a hearing to approve a sale of all or substantially all of the Debtors' assets free and clear of liens, claims and interests to the successful bidder (the "Bid Procedures Motion"). The Bid Procedures Motion must be filed not later than January 7, 2026.

The Debtors also intend to negotiate a chapter 11 plan that will, among other things, allocate any proceeds of sale remaining after the payment of allowed secured claims and other assets to the holders of allowed claims in accordance with the priorities set forth in the Bankruptcy Code. Given the anticipated timing of the sale process, the Debtors do not anticipate filing a plan until the fourth quarter of 2026 and the Debtors are required under the DIP milestones to obtain confirmation of a chapter 11 plan no later than 90 days following the consummation of a sale.

This Status Report addresses the following issues to be addressed at the Status Conference:

## II.

## STATUS REPORT

**A.** **Administrative Solvency of the Estates, Including Identification and Treatment of Potential Professional Fees and § 503(b)(9) Administrative Claims**

The Debtors anticipate financial solvency in their operating performance since litigation will

-3-

be stayed. The Debtors have budgeted for postpetition operating expenses as well as certain claims entitled to priority including employee wages and benefits, under § 507(a)(4), claims asserted under § 503(b)(9), and critical vendor payments, which are addressed in the DIP Term Sheet and Interim DIP Order.

However, as discussed below, the DIP Term Sheet and Interim DIP Order do not provide for professional fees. The Debtor is in discussions with the DIP Lender regarding the Debtors' request to provide a mechanism for professional compensation, including professionals for the Official Committee of Unsecured Creditors. The Debtors also intend to confer with the Office of the United States Trustee regarding a motion for entry of an order establishing procedures and authorizing payment of professional fees and expenses on a monthly basis to the extent provided for in any final financing order.

**B.** **Motions for Relief from Stay Which Are Pending or Which Have Already Been Acted Upon**

No motions for relief from stay have been filed. The Debtors' ordinary course professionals have filed and/or continue to file notices of the automatic stay in pending litigation.

**C.** **Motions under § 365(d)(3) or (d)(4) Which Are Pending or Which Have Already Been Acted Upon**

Prior to the Petition Date, the Debtor entered into certain nonresidential, real property leases with various non-debtor entities (the "Landlords"). Although referenced at the "first day" hearing as "insiders," none of the Landlords meet the definition of an "insider" under § 101(31)(B). The Debtors own 20% or more of the equity securities of certain Landlords, and, as a result, such Landlords meet the Bankruptcy Code's definition of an "affiliate," under § 101(2) (the "Affiliate Landlords"). The Debtors also have leases with Landlords that are not affiliates but do have related party ownership (the "Related Party Landlords") and certain other unrelated third parties (the "Third Party Landlords").

**1.** **Affiliate Landlords**

The following Affiliate Landlords constitute "affiliates" under the Bankruptcy Code because of the extent of the Debtors' ownership interests in such Affiliate Landlords. At the request of the

-4-

180562593.1

DIP Lender, the Debtors intend to complete a fair market valuation of the Affiliate Landlord leases, initiated prepetition with Milliman, Inc., to confirm the Debtors' understanding that the leases are at fair market value.

### a. OHPAC Partners, LLC

OHPAC Partners, LLC ("OHPAC Partners") owns and leases to Oroville Hospital the skilled nursing facility that is commonly known as Oroville Hospital Post-Acute Center (the "SNF") located at 1000 Executive Parkway, Oroville, California 95966. The SNF is operated by the Debtors and is licensed for 126 beds and has an average daily census of 113 patients year-to-date with an average length of stay of 57 days. The SNF contains all of the Debtors' skilled nursing facility beds.

OHPAC Partners, LLC and 1000 Executive Parkway, LLC are parties to that certain Lease Agreement dated July 7, 2017 (the "1000 Executive Parkway Lease"), pursuant to which 1000 Executive Parkway leases the premises for use as the SNF. All of the limited liability company interests in 1000 Executive Parkway, LLC were transferred from Evergreen at Oroville, LLC, to the Hospital pursuant to that certain Assignment of Limited Liability Company Interests dated July 1, 2017.

The rent is revised annually due to the Consumer Price Index adjustment provided for in the 1000 Executive Parkway Lease, and the current monthly rent is $153,192.81.

Oroville Hospital holds a 51% ownership interest in OPHAC Partners, LLC.

### b. Oroville Medical Complex, LLC

Oroville Medical Complex, LLC ("OMC") owns a three-story medical office building adjacent to the Oroville Hospital campus, located at 2809 Olive Highway, Oroville, California 95966 (the "Medical Complex"). The Debtors utilize the complex to house hospital-based physicians, an outpatient imaging center, cancer care program, and an independent retail pharmacy.

The Hospital leases from OMC nineteen different suites consisting of approximately 51,431 square feet of office space at 2809 Olive Hwy, Oroville, California on a month-to-month basis. The Medical Complex houses a variety of specialized services, including radiation oncology with a bunker for a linear accelerator, medical imaging, lab draws, an infusion center for cancer chemotherapy, pathology, a surgery clinic, a dermatology clinic, obstetrician-gynecological services, outpatient ambulatory services, and procedure suites. The Medical Complex also includes a full service-imaging center, CT scan, MRI, Mammography, bone density and ultrasound capabilities.

The current monthly rent for the leased space is $209,895.59, which includes a proportional share of fees for common area maintenance ($1.37 per square foot) and janitorial services ($0.22 per square foot).

OroHealth holds a 51% interest in Oroville Medical Complex, LLC.

### c. Oroville Medical Partners, LLC

Oroville Medical Partners, LLC ("Oroville Medical Partners") owns commercial buildings located at 2760 and 2780 Oro Dam Boulevard, Oroville, California 95966 (collectively, the "Oro Dam Facilities"). The Debtors operate three clinics and their IT services at the Oro Dam Facilities. The clinics include services for family medicine, Ear, Nose and Throat

medicine, and facilities for vascular thorasic hepatobiliary surgeries.

Oroville Medical Partners, LLC and Oroville Hospital are parties to (i) that certain Lease Agreement dated January 20, 2017 (the "2760 Oro Dam Lease"), pursuant to which Hospital leases 6,072 square feet at 2760 Oro Dam Boulevard, Oroville, California; and (ii) that certain Lease Agreement dated January 20, 2017 (the "2780 Oro Dam Lease"), pursuant to which Hospital leases 5,477 square feet at 2780 Oro Dam Boulevard, Oroville, California.

The current monthly rent under the 2760 Oro Dam Lease and the 2780 Oro Dam Lease is $9,447.24 and $10,027.63, respectively. Due to the Consumer Price Index adjustment provided for in the 2760 and 2780 Oro Dam Boulevard Lease, the monthly rent will increase on January 1, 2026 by 2.7% to $9,702.33 and $10,298.38 respectively.

Oroville Hospital holds a 51% ownership interest in Oroville Medical Partners.

### 2. Related Party Landlords

The following Related Party Landlords do not constitute "affiliates" under the Bankruptcy Code; however, they are either minority-owned by the Debtors or by executives or other parties related to the Debtors. At the request of the DIP Lender, the Debtors intend to complete a fair market valuation of the Related Party Landlord leases, initiated prepetition with Milliman, Inc., to confirm the Debtors' understanding that the leases are at fair market value.

#### a. Oroville Sports Club, LLC

Oroville Sports Club, LLC ("OSC") and OroHealth are parties to that certain *Lease Agreement* dated January 1, 2020 (the "2600 Oro Dam Lease"), pursuant to which OroHealth leases 24,735 square feet at 2600 Oro Dam Boulevard, Oroville, California.

OSC leases its space to the Debtors to operate their business offices that include patient financial services (i.e. billing and collections services), IT offices, registration and authorization staff, central scheduling, and conference rooms for community events.

The current monthly rental under the 2600 Oro Dam Lease is $41,014.37. Due to the Consumer Price Index adjustment provided for in the 2600 Oro Dam Lease, the monthly rent will increase on January 1, 2026 by 2.7% to $42,121.76.

OroHealth holds a 19% ownership interest in OSC. OSC also includes among its members an executive of OroHealth and Oroville Hospital. Accordingly, in an abundance of caution, OSC is identified as having related party ownership.

#### b. Dove's Landing, LLC

Dove's Landing, LLC owns and leases to OroHealth certain premises that comprise Oroville Hospital's medical complex, which includes the Debtors' Outpatient Rehabilitation Center, Urgent Care Clinic, Outpatient Pharmacy, and Multispecialty Practice. The Multispecialty Practice includes specialties such as Primary Care, Allergy & Immunology, Cardiology, Endocrinology, Nephrology, Pain Management, Urology, Urogynecology, and Bariatric Surgery. The premises also include administrative offices including human resources, an education department, employee health, compliance, IT network servers, and conference rooms.

-6-

180562593.1

Dove's Landing, LLC and OroHealth are parties to that certain Lease Agreement dated January 1, 2018 (the "2450 Oro Dam Lease"), pursuant to which OroHealth leases approximately 65,389 square feet of medical facilities located at 2450 Oro Dam Boulevard, Oroville, California.

The current monthly rental under the 2450 Oro Dam Lease is $99,923.72. Due to the Consumer Price Index adjustment provided for in the 2450 Oro Dam Lease, the monthly rent will increase on January 1, 2026, by 2.7% to $102,621.66.

The Debtors do not hold any ownership interest in Dove's Landing, LLC. However, Dove's Landing, LLC is owned by an executive of Oroville Hospital and OroHealth, the spouse of a physician on the medical staff, and an independent physician in the area. Accordingly, in an abundance of caution, Dove's Landing, LLC is identified as having related party ownership.

### 3. Third Party Landlords

The Debtors are party to approximately 36 additional leases with third party landlords. The majority of these Third Party Landlords relate to the Debtors' clinics and the Debtors' laboratory and draw stations.

As of the filing of this Status Report, the DIP Lender has not consented to budget for the rental payments owed to the Affiliate Landlords and the Related Party Landlords. The DIP Lender has requested that the Debtors defer postpetition rent obligations during the 60-day moratorium period set forth in § 365(d)(3) until Milliman, Inc. has completed a market analysis of these leases. As of the filing of this Status Report, the Debtors' position is that the Landlords are not "insiders," as defined under § 101(31), and that such rent obligations must be paid in the ordinary course of business, like all other postpetition obligations, given the potential impact to operations if the leases are terminated. Moreover, based on discussions with counsel to the Affiliate Landlords and the Related Party Landlords, the Debtors understand that these parties would move to compel payment of the ordinary course lease obligations in the event they are not otherwise provided for under the budget. The Debtors anticipate that the Milliman, Inc. analysis may be completed by the time of the Status Conference and will provide an update, if any, at that time.

Aside from these issues, the Debtors believe that any purchaser of the Debtors' assets may wish to negotiate the assumption and assignment of one or more of the leases with the Landlords, or a potential acquisition of the underlying real property. These issues will need to be deferred while the Debtors run a sales process and determine whether potential bidders wish to assume or negotiate the acquisition of the underlying real property.

In the near term, the Debtors do not anticipate any other material issues involving assumption

or rejection of unexpired leases of nonresidential real property. No such motions have been filed.

**D. Status of Stipulations or Motions for Use of Cash Collateral or the Obtaining of Credit**

**1. The Interim DIP Agreement**

On December 9, 2025, the Debtors filed a motion seeking authorization to obtain senior secured postpetition financing and approval to enter into a delayed draw term loan debtor-in-possession credit facility (the "Rosemawr DIP Facility") provided by Rosemawr Management, LLC ("Rosemawr") under which $16 million would be made available on an interim basis and an additional $22 million would be made available on a final basis [ECF No. 58] (the "DIP Motion"). In the DIP Motion, the Debtors also sought authority to use the cash collateral of certain of their prepetition secured creditors—the holders of Hospital Revenue Bonds, Series 2018 (the "Series 2018 Bonds") and the City of Oroville Revenue Bonds (Oroville Hospital), Series 2019 (the "Series 2019 Bonds" and, together with the Series 2018 Bonds, the "Bonds"). UMB Bank is the Master Trustee for the Bonds and the Bond Trustee for the Series 2019 Bonds. In the DIP Motion, the Debtors also requested authorization to grant Rosemawr a priming lien on the collateral of the Bonds based on an equity cushion. The Rosemawr DIP term sheet also provided, among other things, for a carve out to pay United States Trustee quarterly fees and professional fees.

On December 11, 2025—the day of the First Day Hearings—UMB Bank, in its capacity as Master Trustee and Series 2019 Bond Trustee, filed a Preliminary Objection to the DIP Motion [ECF No. 86], pursuant to which, among other things, UMB Bank proposed its own term sheet (the ("UMB Term Sheet") that provided for a DIP Facility of up to $40 million. [ECF No. 87]. The UMB Term Sheet provided for a carve out to pay United States Trustee quarterly fees but did not include a carve out for estate professionals.

At the hearing on the DIP Motion, the Court stated that it would not permit a priming fight and ordered the Debtors to negotiate a DIP facility with UMB Bank. The Court also stated that it would not approve a professional fee escrow and declined to approve a professional fee carve-out prior to the appointment of a creditors committee.

At the Court's request, the Debtors and UMB Bank negotiated the DIP Term Sheet, the Interim DIP Order, and an approved budget (the "Interim Approved Budget") (collectively, the

-8-

180562593.1

"Interim DIP Agreement"). The Interim DIP Agreement provides for the payment of operating expenses during the interim period but does not provide a payment mechanism for estate professionals. At the hearing, the Court approved the Interim DIP Agreement and entered the Interim DIP Order on December 9, 2025 [ECF No. 82].

### 2. Status of Negotiations Related to Final DIP Agreement

The DIP Lender and the Debtors are still in negotiations concerning a final DIP order. The DIP Lender has provided the Debtors with an initial draft final DIP order and the Debtors are finalizing a proposed final budget to share with the DIP Lender. The Debtors also understand that the Office of the United States Trustee has recently appointed an Official Committee of Unsecured Creditors (the "Committee"). Given the holidays, the cadence of negotiations, and the likely involvement of the Committee in the near-term, the Debtors will endeavor to provide notice of any proposed final DIP order, budget, and resolutions of objections as soon as practicable.

### E. Employment of Professionals

On December 12, 2025, this Court entered its *Order Appointing Epiq Corporate Restructuring, LLC, as Notice, Claims and Solicitation Agent* [ECF No. 101].

On December 19, 2025, the Debtors filed an application to employ Cain Brothers as investment banker to the Debtors [ECF No. 138], which was consistent with a milestone under the Interim DIP Agreement. The Cain Brothers employment application is set for hearing on January 12, 2026, at 10:00 a.m. As set forth more fully in Section II.I., below, the Debtors reserve the right to withdraw the Cain Brothers application in the event Cain Brothers is unable to proceed with the engagement.

On December 17, 2025, the Debtors accepted the resignation of their longtime financial advisor, FTI Consulting, Inc. ("FTI"). The Debtors requested FTI's resignation following longstanding prepetition objections to FTI's employment raised by UMB Bank. The Debtors understood that UMB Bank intended to mount an expensive and time-consuming objection to FTI's employment based on cost and potential preference exposure. In the interest of resolving UMB Bank's objection, notwithstanding the disruption early in the Chapter 11 Cases, the Debtors' boards interviewed three financial advisor candidates on December 18, 2025, including a recommendation

180562593.1

by UMB Bank. Through that process, the Debtors selected Force Ten Partners, LLC, as their replacement financial advisor. As set forth below, the Debtors believe that this will cause minimal disruption to the Chapter 11 Cases and Force Ten Partners, LLC, has worked strenuously to come up to speed, which FTI has helped facilitate with a diligent transition process.

The Debtors intend to file employment applications for their remaining professionals prior to the status conference: (i) Fox Rothschild LLP, as general bankruptcy counsel; (ii) Greenberg Glusker, LLP, as conflicts counsel; (iii) Force Ten Partners, LLC, as financial advisor; (iv) Hooper, Lundy & Bookman, P.C., as special healthcare counsel; and (v) Berkeley Research Group as quality of earnings consultant.

The Debtors have not yet lodged the employment orders with the Court and will request comment from the U.S. Trustee's office.

**F.      Any Pending Motion to Convert or Dismiss the Chapter 11 Cases, or to Appoint a Chapter 11 Trustee**

No such motions have been filed.

**G.      Intentions Concerning a Reorganization Plan, including a Realistic Timetable for Filing a Disclosure Statement and Plan and for Setting Hearings on Both**

As noted above, subject to Bankruptcy Court approval, the Debtors have retained Cain Brothers to run a sales process to enable the Debtors to market and sell the Debtors' assets to a buyer to ensure that the Debtors' healthcare facilities continue to deliver quality healthcare services to the communities in which the Debtors operate. The Debtors estimate that they will seek Bankruptcy Court approval of the sale in or about April 2026, which sale will be subject to the California Attorney General approval process, which could take an additional 180 days from entry of a sale order.

Based on the foregoing, the Debtors, at present, cannot provide a realistic timetable for filing a disclosure statement and a plan and for setting hearings on both. However, the Debtors' best estimate as of today is that the Debtors will likely be in a position to file a disclosure statement and plan in late 2026.

-10-

180562593.1

**H.** **The Timely Filing of Monthly Operating Reports, DIP Accounts, Payment of United States Trustee's Fees and Proof of Adequate Insurance**

The Debtors' first monthly operating report is due January 21, 2026. The Debtors do not believe the transition to Force Ten Partners, LLC, will affect their ability to comply with this deadline. However, the Debtors reserve the right to extend the initial monthly operating report deadline, under LBR 2015-1(f), to the extent necessary.

On December 12, 2025, this Court entered its *Amended Interim Order (I) Authorizing the Debtors to (A) Maintain Existing Bank Accounts; (B) Continue Use of Cash Management System; (C) Continue Use of Business Forms; (D) Perform Intercompany Transactions; (E) Continue Credit Card Program; (F) Honor Certain Prepetition Obligations Related Thereto; and (G) Continue Patient Refunds; (II) Waiving Requirements of LBR 2015-1; (III) Granting Limited Waiver of Section 345(b) Deposit Requirements; (IV) Scheduling a Final Hearing; and [VI] Granting Related Relief* [ECF No. 96]. The final hearing on the cash management motion and several other first day motions is January 12, 2026, at 10:00 a.m.

The Debtors intend to pay all United States Trustee's fees when they come due.

On December 12, 2025, this Court entered its *Interim Order Authorizing the Debtors to: (I) Maintain, Renew, or Supplement Insurance Policies and Satisfy Obligation[s] Related Thereto; and (II) Granting Related Relief* [ECF No. 99]. The final hearing on the insurance motion and several other first day motions is January 12, 2026, at 10:00 a.m. In connection with the Initial Debtor Interview, scheduled for January 14, 2026, with the Office of the U.S. Trustee, the Debtors will be providing evidence to the U.S. Trustee of insurance of all its property, including liability, medical malpractice, auto, workers' compensation, and other insurance. The Debtors believe their insurance is adequate.

**I.** **Any Other Matters Which Might Materially Affect the Administration of This Case**

As of the date of this Status Report, the Debtors believe the following issues may materially affect the administration of these Chapter 11 Cases:

**Professional Attrition Risk.** As discussed above, the Debtors are in the process of negotiating a final DIP financing order. The Interim DIP Order does not include a carve-out for

-11-

180562593.1

professional fees. Given the size and complexity of these Chapter 11 Cases, the Debtors anticipate that this may put professionals at risk of nonpayment of millions of dollars in fees. Professionals are particularly aware of a similar outcome in a recent California no-carve-out case, Beverly Community Hospital Association. As a result, at least two firms essential to the Debtors' proposed sale process have indicated that they cannot provide services to the Debtors in these Chapter 11 Cases if there is no assurance of payment. Moreover, the Debtors understand that the lack of a carve-out has dissuaded multiple, well-qualified professionals from offering services to the Committee. While negotiations remain ongoing, the Debtors are concerned that limitations on their ability to compensate professionals may result in value-destructive professional attrition.

**Financial Advisor Transition.** As noted above, Force Ten Partners, LLC has replaced FTI as proposed financial advisor to address objections raised by UMB Bank. The Debtors are hopeful—given the strong cooperation between Force Ten Partners, LLC, and FTI—that the transition will not materially impact financial reporting.

**Related Party Executory Contracts.** In addition to the Affiliate Landlords and Related Party Landlords, the Debtors are also party to two key executory contracts with noninsider entities: Tenzing Medical, LLC ("Tenzing") and Oroville Solar Partners ("Solar"). UMB Bank has also indicated in negotiations that the Debtors should not provide for postpetition obligations to Tenzing and Solar, given their affiliate or "related party" status. However, as discussed below, nonpayment of these ordinary course obligations postpetition may result in material impacts to operations:

**Tenzing Medical, LLC.** Tenzing and Oroville Hospital are parties to that certain Software Development Agreement dated March 28, 2017 (the "Tenzing/Hospital Software Development Agreement"), pursuant to which Tenzing provides software design, development, and support for storage of Hospital's electronic medical records. Tenzing and the developer subcontractor Aevan, Inc. also are parties to a Software Development Agreement dated December 9, 2019 (as amended, "Tenzing/Aevan Software Development Agreement"), pursuant to which Aevan assists with the design, development and testing of software related to the Debtors' operations.

Tenzing provides a Tenzing Medical Platform (the "TMP"), which is a cloud-based software platform that enables the Debtors to manage and optimize their hospital operations and related facilities. More specifically, TMP is a suite of integrated tools for operational hospital management that use technologies and solutions for real-time data and analytics in patient care and healthcare processes. TMP increases efficiencies because it is customized for use by the Debtors' physicians and staff.

The current monthly fee of $57,000 under the Tenzing/Aevan Software Development Agreement is passed on to the Debtors in connection with the Tenzing/Hospital Software

1. Development Agreement.

2. An executive of Oroville Hospital owns a majority interest in Tenzing and Oroville Hospital owns a 9% membership interest in Tenzing.

**Oroville Solar Partners, LLC**. Solar and Oroville Hospital are parties to agreements whereby Solar financed the acquisition, installation and management of the solar panels, and the purchase, ownership, use, transmission, marketing and sale of any input, output or right associated therewith.

The solar panels benefit the Debtors in electrical bills savings. The Debtors' PG&E bill is reduced because of the solar panels owned by Solar. In return for the use of the solar panels, the Debtors pays an agreed upon amount per kilowatts thermal in savings back to Solar.

Solar is entitled to an annual payment of $9,000 by Hospital on January 1, 2026.

Oroville Hospital owns a 50% membership interest in Solar and the remaining 50% is owned by an executive of the Debtors and a spouse of a physician on the Debtors' medical staff. As such, Solar constitutes an affiliate of the Debtors under the Bankruptcy Code.

The Debtors reserve all rights to further update or supplement this Status Report in advance of, or at, the Status Conference to address continuing developments to the issues raised in this Status Report or any other matter relevant to the Court's consideration of these Chapter 11 Cases.

Dated: December 29, 2025

**FOX ROTHSCHILD LLP**

/s/ Keith C. Owens
Keith C. Owens
Nicholas A. Koffroth
*Proposed Counsel to Oroville Hospital, et al., the Debtors and Debtors-in-Possession*

-13-

180562593.1