5

KYRSTEN B. SKOGSTAD (SBN 281583)
CALIFORNIA NURSES ASSOCIATION
LEGAL DEPARTMENT
155 Grand Avenue
Oakland, CA  94612
510-761-1522 (Telephone)
510-663-4822 (Facsimile)
kskogstad@calnurses.org

Attorney for
CALIFORNIA NURSES ASSOCIATION

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>OROVILLE HOSPITAL, *et al.*,<br><br>    Debtors and Debtors in Possession.<br>_____<br><br>☒ Affects All Debtors<br><br>☐ Affects Oroville Hospital<br><br>☐ Affects OroHealth Corporation: A Nonprofit Healthcare System<br><br>    Debtors and Debtors in Possession. | Lead Case No. 25-26876<br><br>Jointly Administered With: 25-26877<br><br>**DCN KCO-2**<br><br>Chapter 11<br><br>Hon. Christopher D. Jaime<br><br>**OBJECTION BY CREDITOR CALIFORNIA NURSES ASSOCIATION TO MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION EMPLOYEE WAGES AND SALARIES, AND OTHER COMPENSATION, AND (B) CONTINUE EMPLOYEE BENEFITS; AND (II) GRANTING RELATED RELIEF [DKT. NOS. 24, 104]**<br><br>**Hearing:**<br>**Date:** January 12, 2026<br>**Time:** 10:00 AM<br>**Place:** Courtroom 32<br>        501 I Street<br>        Sacramento, CA 95814 |

Filed 12/30/25     Case 25-26876     Doc 160

The California Nurses Association ("CNA"), a creditor and party-in-interest in the chapter 11 bankruptcy case of the above-captioned debtors and debtors-in-possession (the "Debtors"), submits this objection (the "Objection") to the Interim Order Approving Debtors' Emergency Motion for Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages and Salaries, and Other Compensation, and (b) Continue Employee Benefits Programs, and (II) Granting Related Relief (the "First Day Wage and Benefits Motion"). In support of this Objection CNA respectfully represents as follows:

## BACKGROUND

1. On December 8, 2025 (the "Commencement Date"), the Debtors each commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtors have been authorized to remain in possession of their property and continue in operation and management of their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On the Commencement Date, Debtors filed the First Day Wage and Benefits Motion. [Dkt. 24].

4. On December 12, 2025, the Court issued an Amended Interim Order Approving Debtors' Emergency Motion for Order pursuant to its Wage and Benefits Motion pending a final hearing on January 12, 2025. [Dkt. 104].

5. As stated in the First Day Wage and Benefits Motion, CNA represents approximately 418 registered nurses at Oroville Hospital. The Debtors and CNA are parties to a collective bargaining agreement ("CBA") that specifies the terms and conditions of employment of the CNA-represented registered nurses, including, without limitation, wages and benefits. The CBA is in effect from April 11, 2024, to April 11, 2027.

## PRELIMINARY STATEMENT

6. CNA objects to the First Day Wage and Benefits Motion and Interim Wage Order on the grounds that, as currently drafted, it is ambiguous whether employees may use their

1. accrued leave for vacation, sick, continuing education or other purposes provided for in the CBA beyond the limits allowed under the prepetition priority wage and benefits cap provided in Section 507(a)(4) and so a clarification is necessary.

7. This limitation will prevent registered nurses (as well as all staff) from taking planned vacations, sick leave or using education hours in their normal course of employment merely because the leave was accrued prepetition. While in past bankruptcies in which CNA was a creditor and/or party-in-interest, the cap applied to leave cash-outs, that is payments for accrued leave at termination or leave cash-out as otherwise provided for in a CBA. CNA has not previously seen the limitation applied to actual uses of the accrued leave.[1]

8. Since the Commencement Date fell in the middle of pay period, the registered nurses have already used up a significant amount of the prepetition priority wages and benefits cap and if the cap is applied to the use of leave during the bankruptcy, it will most certainly have a detrimental effect on employee morale.

9. In turn, if the Hospital staff is burnt out because they are now unable to take previously earned leave on top of dealing with the stress of working for an employer in bankruptcy, the going concern value of the Hospital will be affected through high employee turnover and/or labor unrest and the bankruptcy estate will suffer.

**OBJECTION**

10. Paragraph 5 of the Interim Wage Order states that "Debtors are authorized, but not directed, to honor their existing policies for PTO to the extent they permit continuing employees to use their prepetition accrued leave in the ordinary course of business and going

---

[1] See *In re Verity Health System of California*, 2:18-bk-20151-ER, Dkt. 612, ¶ 11 (Bankr. C.D. Cal.Oct. 22, 2018) (To honor and pay the Paid Time Off ("PTO") and Extended Sick Leave ("ESL") obligations that accrued prepetition, allowing Employees to utilize postpetition all prepetition PTO and ESL in the ordinary course of the Debtors' business) and *In re Watsonville Hospital Corporation, et. al.*, 21-51477, Dkt. 185, ¶ 3 (Bankr. N.D. Cal. Jan. 12, 2022). Final First Day Wage and Benefit orders are attached as Exhibits A and B to the Exhibit List, respectively, filed contemporaneously herewith.

forward." [Dkt. 104].[2]

11. The underlying motion supporting the order states that:

> By this Motion, the Debtors seek authority, but not direction, to continue to honor their existing policies for PTO Plans to the extent it permits continuing employees to use their prepetition accrued leave in the ordinary course of business and going forward; **provided, however**, that an employee's ability to use prepetition accrued PTO shall not exceed the Priority Cap imposed by §507(a)(4) for all prepetition Employee obligations taking into account such employee's other obligations.

[Dkt. 24, p. 12] (emphasis in original).

12. Accordingly, when the two documents are read together, an argument could be made that PTO when used by a current employee post-petition is subject to the section 507(a)(4) cap if accrued prepetition. Moreover, the Oroville Hospital HR department has recently taken this position as well. See Declaration of Kim Jakab, ¶ 4, Exhibit C (HR Director writing to Jakab to explain that nurses' use of continuing education leave will be subject to the 507(a)(4) cap to the extent such leave was accrued during the prepetition priority period.).

13. Therefore, CNA requests that Paragraph 5 of the Order be amended to read:

> The Debtors are authorized to allow Employees to use accrued prepetition Paid Leave post-petition in the ordinary course of business in the Debtors' discretion, consistent with existing Paid Leave policies regardless of when such leave was accrued and without regard to the Section 507(a)(4) or (a)(5) cap.

---

[2] Paragraph 6 of the Interim Wage Order, specifically mentions the cap with regard to cashed out leave which CNA does not object to:

> The Debtors are also authorized, but not directed, to pay the Employees for unused PTO as permitted per Debtors' policy that accrued within the 180 days prior to the Petition Date so long as the total of payments already then made for prepetition Employee Obligations and any other wage-related payments do not exceed the per Employee $17,150 priority cap imposed by section 507(a)(4) of the Bankruptcy Code.

[Dkt. 104].

## **CONCLUSION**

18.  CNA respectfully requests that the Court sustain CNA's objection and modify paragraph 5 of the Interim Wage Order in accordance with this Objection.

DATED:  December 30, 2025         CALIFORNIA NURSES ASSOCIATION
                                  LEGAL DEPARTMENT

                                   /s/ Kyrsten B. Skogstad
                                  Kyrsten B. Skogstad
                                  Attorney for
                                  CALIFORNIA NURSES ASSOCIATION