9

PETER C. ANDERSON
UNITED STATES TRUSTEE
GREGORY S. POWELL, CA SBN 182199
ASSISTANT UNITED STATES TRUSTEE
JASON BLUMBERG, SBN 330150
TRIAL ATTORNEY
**UNITED STATES DEPARTMENT OF JUSTICE**
OFFICE OF THE UNITED STATES TRUSTEE
501 "I" Street, Suite 7-500
Sacramento, CA 95814
Telephone: (916) 930-2100
Email: jason.blumberg@usdoj.gov

Attorneys for Peter C. Anderson
United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>OROVILLE HOSPITAL, *et al.*,<br><br>Debtors and Debtors in Possession.[1] | Lead Case No. 25-26876<br><br>Jointly Administered With:<br>Case No. 25-26877<br><br>DCN NAK-7 |
| ☒ Affects All Debtors<br><br>☐ Affects Oroville Hospital<br><br>☐ Affects OroHealth Corporation: A Nonprofit Healthcare System<br><br>Debtors and Debtors in Possession. | Chapter 11<br><br>Hon. Christopher D. Jaime<br><br>Hearing Date: January 12, 2026<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom 32<br>501 I Street<br>Sacramento, California 95814<br>or *by Zoom Webinar* |

**OBJECTION OF THE UNITED STATES TRUSTEE TO FINAL APPROVAL OF DEBTORS' MOTION FOR DIP FINANCING AND USE OF CASH COLLATERAL**

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Oroville Hospital (4554) and Orohealth Corporation: A Nonprofit Healthcare System (4776). The mailing address for the Debtors is 2767 Olive Highway, Oroville, California, 95966.

Peter C. Anderson, the United States Trustee for Region 17 (the "UST"), by and through his undersigned counsel, hereby files this objection to final approval of the *Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (ECF No. 58) (the "Motion"). In support of his Objection, the UST respectfully represents as follows:

## I. INTRODUCTION

1. The Debtors seek final approval of a DIP financing facility that is entirely different than the one described in the Motion. There are different lenders and different terms.

2. Although the Court approved the new DIP facility on an interim basis, the Debtors have not yet filed a form of Final Order. Nor have the Debtors filed a supplement to the Motion that addresses whether the new DIP facility includes any of the eleven provisions enumerated in Rule 4001(c)(1)(B). Because creditors and the Court are entitled to know what precisely is being proposed, consideration of the Motion should be deferred until the Debtors file these documents.

3. If the Court is inclined to consider the Motion on January 12, 2026, the UST opposes the Motion, unless the new DIP facility is modified to address the concerns set forth in Paragraph 24 of this Objection.

///

///

///

## II. FACTUAL BACKGROUND

### A. General Case Background

4. On December 8, 2025 (the "Petition Date"), the Debtors commenced voluntary cases under Chapter 11 of the United States Bankruptcy Code. See ECF No. 1. The Debtors are currently debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

5. On the Petition Date, the Court entered an Order directing the joint administration of these cases for procedural purposes only. See ECF No. 15.

6. The Debtors have not yet filed the required Schedules and Statements, including Schedule A/B, Schedule D, Schedule E/F, and the Statement of Financial Affairs. See ECF No. 3. The Debtors' deadline to do so has been extended to January 22, 2026. See ECF No. 105.

7. On December 23, 2025, the UST appointed the official committee of unsecured creditors (the "Committee"). See ECF No. 145.

8. The initial debtor interview and the meeting of creditors under 11 U.S.C. § 341 will be held on January 14, 2026, and January 20, 2026, respectively. See ECF No. 135.

9. According to the first day declaration of Robert J. Wentz (ECF No. 20) (the "First Day Declaration"), the Debtors and their affiliates operate "as a California nonprofit health care system in and around Butte County, California, with approximately 133 general acute care beds …. an active emergency room … and 126 skilled nursing facility beds. The Debtors also provide 33 specialty services at their 31 clinics …." See First Day Declaration, at ¶ 8.

10. The Debtors "intend to pursue a sale process in these Chapter 11 Cases." See First Day Declaration, at ¶ 59.

**B. The Motion**

11. As initially proposed, the Motion sought approval of a $38 million debtor in possession facility from Rosemawr Management, LLC (the "Original DIP Facility"). See Motion, at p of 16.

12. At the interim hearing on December 11, 2025, however, the Court declined to approve the Original DIP Facility. The Court instead approved, on an interim basis, an alternative debtor in possession facility (the "Bondholder DIP Facility"), under which UMB Bank, N.A. (as successor Series 2019 Bond Trustee) and one or more pre-petition bondholders are the DIP lender. See ECF No. 112 (the "Interim Order").

13. As set forth in the term sheet attached to the Interim Order (the "Term Sheet"), salient terms of the Bondholder DIP Facility include the following:

a. The DIP lender has agreed to lend the Debtors up to $40 million. Of this amount, up to $16 million was available on an interim basis.

b. The termination date is, generally, the earlier of (i) January 8, 2027, (ii) the effective date of a confirmed plan, or (iii) acceleration of the Bondholder DIP Facility upon an event of default.

c. The non-default interest rate is 10.75% per annum. The default interest rate is 12.75% per annum.

d. Upon final approval of the Bondholder DIP Facility, the DIP lender would earn an exit fee of 3.0% of the DIP commitment, or $1.2 million. The exit fee is payable on the termination date.

e. There are milestones tied to a sale of substantially all the Debtors' assets, including (i) the filing of a bid procedures motion within 30 days of the Petition Date, (ii) approval of the bid procedures within 60 days of the Petition Date, and (iii) entry of an Order approving the sale by May 15, 2026.

f. The Final Order shall provide that the DIP lender and the master trustee shall have the right to credit bid their claims.

g. There is an indemnity in favor of the DIP lender and its affiliates, except for claims arising from an indemnified party's own gross negligence or willful misconduct.

See ECF No. 112, at pp. 33-34, 42-43, 56-58, and 60 of 67.

## III. OBJECTION

14. Before approving debtor in possession financing, a court must determine whether the terms of the proposed financing are fair, reasonable and adequate. See In re Los Angeles Dodgers LLC, 457 B.R. 308, 312-13 (Bankr. D. Del. 2011).

15. In this respect, courts routinely consider the following factors: (i) whether the proposed facility is an exercise of the debtor's reasonable business judgment; (ii) whether the proposed facility is in the best interests of both the estate and its creditors; (iii) whether the transaction is both (a) necessary to preserve estate assets and (b) necessary and essential for the continued operation of the debtor's business; (iv) whether the terms of the proposed transaction are fair and reasonable given the circumstances; and (v) whether the proposed facility was negotiated in good faith and at arm's length. See In re Farmland Indus., Inc., 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003).

16. Courts recognize that debtors in possession often "enjoy little negotiating power." See In re Defender Drug Stores, Inc., 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992). Thus, bankruptcy courts have not approved financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the sole (or primary) benefit of a post-petition lender. See, e.g., Ames Dep't Stores, Inc., 115 B.R. 34, 38-39 (Bankr. S.D.N.Y. 1990) (citing In re Tenney Vill. Co., Inc., 104 B.R. 562, 568 (Bankr. D.N.H. 1989) (holding that the terms of a post-petition financing facility must not "pervert the reorganizational process from

one designed to accommodate all classes of creditors . . . to one specially crafted for the benefit" of one creditor)).

17. Ultimately, the debtor bears the burden of proof when seeking financing under 11 U.S.C. § 364(c) and/or (d). See In re Tamarack Resort, LLC, 2010 WL 4117459, at *9 (Bankr. D. Idaho Oct. 19, 2010).

**A. Consideration of the Motion Should Be Deferred until the Debtors File the Form of Final Order and a Statement Addressing whether the Bondholder DIP Facility Includes Provisions Subject to Disclosure under FRBP 4001(c)(1)(B).**

18. Federal Bankruptcy Rule 4001(c) sets forth a number of requirements regarding the contents of a motion to obtain post-petition financing. See Fed. R. Bankr. P. 4001(c); 9 Collier on Bankruptcy ¶ 4001.07 (16th ed. 2022) ("The rule has a number of requirements regarding the contents of a motion under Rule 4001(c).").

19. These requirements recognize that creditors "are entitled to know precisely what is being proposed and provided an opportunity to evaluate the facts, and legal sufficiency, of the request." See In re Tamarack Resort, LLC, 2010 WL 4117459, at *10.

20. Among the requirements of Rule 4001(c) is that the motion "must be accompanied by a copy of the credit agreement and a proposed form of Order". See Fed. R. Bankr. P. 4001(c)(1)(A); see also In re Lo'r Decks at Calico Jacks, LLC, 2010 WL 1965894, at *3 (Bankr. E.D.N.C. May 14, 2010) ("[T]he rule requires that a copy of the proposed credit agreement must always accompany the motion.") (emphasis added).

21. Moreover, a motion to obtain post-petition credit must "list or summarize [and] describe [the] nature and extent" to which the motion seeks approval of any of the eleven

provisions enumerated in Rule 4001(c)(1)(B). See Fed. R. Bankr. P. 4001(c)(1)(B).[2] This requirement is intended "to enhance the ability of the court and interested parties to find and evaluate those provisions." See In re Lo'r Decks at Calico Jacks, LLC, 2010 WL 1965894, at *3.

22. Here, the Motion describes the Original DIP Facility, which is entirely different than the Bondholder DIP Facility. Although the Court has approved the Bondholder DIP Facility on an interim basis, the Debtors have not yet filed a form of Final Order for the Bondholder DIP Facility. Nor have the Debtors filed a supplement to the Motion that addresses whether the Bondholder DIP Facility includes any of the eleven provisions enumerated in Rule 4001(c)(1)(B).

23. Consideration of the Motion should be deferred until the Debtors file these documents.

**B. The Bondholder DIP Facility Contains Objectionable Provisions.**

24. The UST objects to the Bondholder DIP Facility on the following grounds:

a. Upon an event of default, it appears that the DIP lenders would receive automatic relief from the automatic stay (subject only to giving five business days' notice for the Debtors to seek an emergency hearing to determine whether an event of default has occurred). See ECF No. 112, at p. 55-56 of 67. The Debtors have not demonstrated "substantial justification" for this relief. See Local Bankruptcy Rule 4001-(1)(c)(3)(H); see also In re Tenney Village Co., Inc., 104 B.R. at 568 (denying final approval of DIP financing agreement that would have, among other things, granted lender relief from the automatic stay unless the debtor obtained an order prohibiting foreclosure within a 7-day notice period).

b. It does not appear that the budget provides for the payment of allowed fees of the Committee's professionals. See ECF No. 112, at p. 67 of 67. This

[2] The eleven enumerated provisions include (i) a determination of the validity of a pre-petition claim or lien, (ii) a waiver or modification of the automatic stay, (iii) the establishment of deadlines for filing a plan and/or entry of a confirmation order, (iv) a waiver of any claims belonging to the estate, (v) the indemnification of any entity, (vi) a waiver of any right under 11 U.S.C. § 506(c), and (vii) the granting of liens on avoidance actions. See Fed. R. Bankr. P. 4001(c)(1)(B).

absence may undercut the adversarial process envisioned by the Bankruptcy Code. Cf., In re Ames Dept. Stores, Inc., 115 B.R. at 38 ("[I]t has been the uniform practice in this Court … to insist on a carve out from a super-priority status and post-petition lien in a reasonable amount designed to provide for the payment of the fees of debtor's and the committees' counsel and possible trustee's counsel in order to preserve the adversary system.").

c. The Bondholder DIP Facility includes milestones and related events of default that may "operate to divest the debtor-in-possession of any discretion in the formulation of a plan or administration of the estate or limit access to the court to seek any relief under other applicable provisions of law." See Local Bankruptcy Rule 4001-1(c)(3)(E). For instance, as noted above, the Debtors must (i) file a bid procedures motion within 30 days of the Petition Date, (ii) obtain approval of the bid procedures within 60 days of the Petition Date, and (iii) obtain approval of a sale of their assets by May 15, 2026. Moreover, the Debtors' proposal of a plan that does not provide for payment in full in cash of the Bondholder DIP Facility is an event of default. See ECF No. 112, at pp. 42-43, 52-54 of 67.

d. The Bondholder DIP Facility contemplates a waiver under 11 U.S.C. § 506(c). See ECF No. 112, at p. 59 of 67. Because the waiver does not appear to be limited to the period for which the Debtors may borrow funds, this is a provision that the Court will not approve without substantial justification. See Local Bankruptcy Rule 4001-1(c)(3)(D).

e. Although avoidance actions would not be subject to the DIP lender's liens (ECF No. 112, at p. 35 of 67), the Interim Order suggests that the proceeds of avoidance actions would not be excluded from the scope of the DIP lender's superpriority claim. See Interim Order, at § 2.4 (p.12) ("[T]he DIP Superpriority Claim shall be payable out of Avoidance Proceeds upon entry of the Final Order."). But see ECF No. 112, at p. 35 of 67. Moreover, the bondholders' adequate protection liens on post-petition assets do not expressly exclude avoidance actions and their proceeds. See ECF No. 112, at p. 38 of 67. Avoidance actions and their proceeds should be preserved for unsecured creditors. Cf. Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV, 229 F.3d 245, 250 (3d Cir. 2000) ("When recovery is sought under section 544(b) of the Bankruptcy Code, any recovery is for the benefit of all unsecured creditors ….."); Local Bankruptcy Rule 4001-1(c)(3)(J).

## IV. CONCLUSION

25. The UST respectfully requests that this Court sustain the Objection and deny the Motion, unless the Motion is modified to address the UST's concerns. The UST reserves all his rights, including to object to any amendments to the Motion.

Dated: December 30, 2025.

Respectfully submitted,

PETER C. ANDERSON
UNITED STATES TRUSTEE

By:/s/ Jason Blumberg
JASON BLUMBERG
Trial Attorney for the United States Trustee